**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**


**UNITED STATES OF AMERICA**                                    **RESPONDENT**


**VERSUS**                              **CRIMINAL ACTION NO. 2:96cr30KS-MTP**

                                        **CIVIL ACTION NO. 2:01cv63KS-MTP**

**KIRKSEY McCORD NIX, JR.**                       **DEFENDANT/MOVANT**


**MEMORANDUM OPINION AND ORDER**

This matter is before the court on motion of the defendant, Kirksey McCord Nix,

Jr., to vacate, set aside, or correct sentence by a person in federal custody pursuant to

Title 28, U. S. Code § 2255.  While lengthy, the court thinks that the summary of the

previous history of this case by the Fifth Circuit is helpful:

> In this criminal appeal, we examine once again the sordid tale of Kirksey
> McCord Nix's ("Nix") prison-based criminal empire and the related murders of
> Vincent and Margaret Sherry.  We first examined these events in *United States
> v. Sharpe*, 995 F.2d 49 (5th Cir.1993) ("*Sharpe* I").  Since *Sharpe I* new facts
> have come to light implicating Thomas Leslie Holcomb ("Holcomb") and Peter
> Halat, Jr. ("Halat") in the Sherrys' murder.  As a result of this new information a
> grand jury issued a fifty-two count indictment against Nix, Holcomb, Halat, and
> Sheri LaRa Sharpe ("Sharpe").  Following a new trial ("*Sharpe II*"), Nix and
> Sharpe were again convicted.  Additionally, the jury convicted both Holcomb and
> Halat for their respective roles in this affair.

> I. BACKGROUND

> *SHARPE I*

> While serving a life sentence for murder at Angola State Penitentiary, Nix

built a criminal empire from which he hoped to earn enough money to buy his way out of prison. Although he dabbled in insurance fraud and drug dealing, Nix's primary money-making scheme was a "lonely hearts" scam designed to defraud homosexual men. Nix and his prison syndicate would place personal advertisements in national homosexual magazines. When men would respond to these ads, Nix or one of his associates would indicate that he was having financial difficulties and needed the respondent to wire money to a Nix associate outside prison.  Nix acquired hundreds of thousands of dollars from this scam.

Mike Gillich ("Gillich"), the alleged "underworld boss" of Biloxi, Mississippi, aided Nix in his various schemes.  Peter Halat, a Biloxi attorney, maintained a trust account for Nix.  Nix's girlfriend, LaRa Sharpe also assisted in the schemes. She worked out of Halat's office and along with Halat rented a safety deposit box in which they kept cash generated by Nix's operations.

In December 1986, Halat told Nix and Gillich that approximately $100,000 of Nix's money was missing from the office trust account.  Halat indicated that he suspected Vincent Sherry, Halat's former law partner and a Mississippi Circuit Judge, of stealing the money.  Coincidentally, Judge Sherry's wife Margaret was a Biloxi mayoral candidate critical of Gillich's operations.  The prosecution produced evidence that the three men arranged to have the Sherrys killed.  In September 1987 Halat discovered the Sherrys dead in their home.

At the first trial for fraud and the attendant murders in 1991, the government argued that Nix, with the assistance of Sharpe, Sharpe's mother, and Gillich, hired ex-convict John Ransom ("Ransom") to kill the Sherrys.  Bill Rhodes ("Rhodes"), an associate of Ransom's, testified that Gillich had discussed with him and Rhodes a possible contract murder.  Rhodes testified further that he was out of town during the murders and that later Ransom told him that he had murdered the Sherrys.  At the first trial, Gillich insisted that Halat had nothing to do with the homosexual scam or the murders.  As a result, the government did not prosecute Halat. T he jury convicted Nix, Gillich, Sharpe, and Ransom of wire fraud and conspiracy to commit wire fraud.  The jury also found Nix and Gillich guilty of travel in aid of murder-for-hire.  We affirmed these convictions in *Sharpe I*, 995 F.2d 49 (5th Cir.1993).


*SHARPE II*

Nix continued his schemes from jail after the 1991 trial. The government also continued its investigation into the scam and murders.  This time, the government concentrated its efforts on determining what role Halat, by then the Mayor of Biloxi, played in the crimes.  In 1994 Mike Gillich turned state's evidence in exchange for a reduction of his *Sharpe I* sentence.  Gillich admitted that Halat was involved in the scams and the murders.  Moreover, Gillich indicated that it was not Ransom who had murdered the Sherrys FN1; but,

rather, Thomas Holcomb, a contract killer hired by Gillich.  While the government was procuring Gillich's testimony, it was negotiating with Robert Wright ("Wright") for his testimony concerning a number of drug deals that he had engaged in with Nix and his associates.  In the end, the government granted Wright full immunity for his testimony.

> FN1. Gillich insisted that Ransom was involved in the planning of the murders, but did not actually kill the Sherrys.

As a result of its further investigations and Gillich's testimony, the government brought a new indictment against Nix, Sharpe, Halat, and Holcomb in 1996.  The indictment charged Nix with racketeering, conspiracy to violate the racketeering statute, fraud, conspiracy to commit wire fraud, money laundering, and conspiracy to obstruct justice.  It charged Sharpe with obstruction of justice and conspiracy to obstruct justice for false testimony she gave in the 1991 trial.  It charged Halat with obstruction of justice, conspiracy to obstruct justice based on false statements made during the 1991 investigation and trial testimony, conspiracy to violate the racketeering statute, racketeering, and conspiracy to commit wire fraud.  Finally, the indictment charged Holcomb with conspiracy to violate the racketeering statute and conspiracy to obstruct justice.

After a lengthy trial, the jury began deliberations on July 11, 1997.  During deliberations some of the jurors complained that one of the jurors was making inappropriate sexual remarks and was refusing to participate in the deliberative process.  The judge overruled a defense motion for a mistrial and investigated the alleged juror misconduct.  Satisfied with his investigation of the matter, the trial judge sent the jurors back for further deliberations.  On July 16, 1997 the jury rendered a partial guilty verdict on all of the charges against Nix, Sharpe, and Holcomb and Halat's obstruction of justice and conspiracy to obstruct justice charges.  The judge gave the jury an *Allen* charge and instructed them to continue deliberating on the charges remaining against Halat.  On July 17, 1997 the jury found Halat guilty of conspiracy to commit wire fraud and conspiracy to violate the racketeering statute.

*United States  v. Sharpe*, 193 F.3d 852, 859-61 (5th Cir.1999)(certiorari denied by

*Sharpe v. U.S.*, 528 U.S. 1173, 120 S.Ct. 1202, 145 L.Ed.2d 1105 (U.S. Feb 22, 2000)

and certiorari denied by *Nix v. U.S.*, 528 U.S. 1180 , 120 S.Ct. 1218, 145 L.Ed.2d 1118

(U.S. Feb 22, 2000) and certiorari denied by *Halat v. U.S.*, 530 U.S. 1229, 120 S.Ct.

2658, 147 L.Ed.2d 273  (U.S. Jun 12, 2000) and certiorari denied by *Holcomb v. U.S.*,

530 U.S. 1229, 120 S.Ct. 2658, 147 L.Ed.2d 273 (U.S. Jun 12, 2000)).

As summarized above, Nix was indicted in Counts 1, 2, 18, 19-21, 22-49, 50-52 of a fifty-two count indictment on October 22, 1996, for RICO Enterprise, RICO Conspiracy, violations of 18 U.S.C. § 1962(c) & (d); 18 U.S.C. § 371; 18 U.S.C. § 1343; numerous predicate racketeering acts; 18 U.S.C. § 1952(a) ITAR; 18 U.S.C. § 2, Aiding and Abetting; 21 U.S.C. §§ 841, 846; among others.  All of the charges arose out of the continuing investigation into the murders of Judge Vincent Sherry and his wife Margaret in 1987.  Nix filed an indigent affidavit and the court appointed the Honorable Thomas Royals of Jackson, Mississippi to represent him at trial and the Honorable Cynthia Stewart as appellate counsel.

Trial was commenced on June 3, 1997, and concluded on July 11.  The jury returned a verdict of guilty as to Nix on July 16, 1997, on Counts 1, 2, 18, 22-49 and 51. The court dismissed Counts 19-21 and Nix was acquitted by the jury on Count 50.  Nix executed a waiver of jury trial on the forfeiture count, 52, and the court, sitting without a jury, heard and thereafter convicted him on that count.

On September 22, 1997, Nix was sentenced to concurrent life sentences on each of Counts 1 and 2, concurrent five year sentences on each of Counts 18, 22-49 and 51, fined $500,000 and ordered to pay restitution of $232,767.11.  All sentences were ordered to be served consecutively to any undischarged sentences already imposed. The Judgment of Conviction was entered on January 28, 1998, after denial of post-trial motions.

Nix's conviction and sentence were affirmed by the Fifth Circuit Court of Appeals on October 29, 1999, *United States  v. Sharpe*, 193 F.3d 852 (5th Cir.1999).  Supreme Court certiorari was denied on February 22, 2000, *Nix v. United States*, 528 U.S. 1180

(Feb. 22, 2000).  Nix filed his initial § 2255 motion on February 20, 2001, one day before the deadline established in the Antiterrorism and Effective Death Penalty Act (AEDPA).  Nix filed an amended petition in June 2001 and after numerous extensions and continuances requested by Nix and granted by the court, the matter is before the court and appears ready for resolution.

However, the docket sheet reflects that Nix filed a Motion to Stay the Proceedings **[#762]** on February 14, 2003, due to impending surgery.  That motion has never been ruled on.  The first order of business is for the court to deny that motion as it has been filed for more than four years and any stay that would have been granted would have expired by now.  The Motion to Stay **[#762]** is therefore Denied.

By way of summary and not exhaustively, in Claim One, Sub-parts A-V, Nix alleges ineffective assistance of trial counsel; Claim Two alleges ineffective assistance of appellate counsel; Claim Three alleges that the jury failed to make necessary findings to support the sentence imposed, i.e. a violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435  (2000); Claim Four alleges an *Apprendi* constitutional violation due to the sentencing court's findings on offense conduct under the United States Sentencing Guidelines; Claim Five alleges another *Apprendi* violation in regard to the charging in the indictment and findings made by the court regarding 18 U.S.C. § 1963(a); Claim Six alleges an *Apprendi* violation in the charging and findings regarding the predicate racketeering acts related to Mississippi code sections for murder and conspiracy to murder; Claim Seven alleges an *Apprendi* violation relating to the charging of the 21 U.S.C. § 841 drug crimes; Claim Eight

alleges a jurisdictional *Apprendi* defect in the indictment related to the charging of the

21 U.S.C. § 846 crime relative to racketeering predicate acts H, I and J; Claim Nine

alleges a constitutional violation related to a lack of showing interstate nexus; Claim

Ten alleges a failure to properly charge and a failure of proof at trial on interstate nexus;

Claim Eleven alleges a constitutional violation related to an *ex-post facto* violation in

regard to Nix's sentence under 18 U.S.C. § 1963(a); Claim Twelve alleges a similar *ex-

post facto* violation related to 18 U.S.C. § 1503; Claim Thirteen alleges another

*Apprendi* violation related to the 18 U.S.C. § 1503 charge and the 18 U.S.C. § 2(a), (b)

charge; Claim Fourteen alleges an *Apprendi* violation related to the charging of

specified predicate racketeering acts as to 18 U.S.C. § 2; Claim Fifteen alleges a

violation related to improper charging of 18 U.S.C. § 1952(a); Claims Sixteen and

Seventeen allege a constitutional violation related to the charging of !8 U.S.C. § 751(a);

Claim Eighteen alleges a constitutional violation related to the jury charge on the 18

U.S.C. § 1343 charge; Claim Nineteen alleges prosecutorial/police misconduct; Claim

Twenty alleges a constitutional violation arising from the denial of Movant's right to self-

representation by the trial court; Claim Twenty-One alleges a constitutional violation

arising from double jeopardy and Movant's previous conviction and sentencing for the

same conduct; Claim Twenty-Two alleges a constitutional violation based on *ex-post

facto* clause for the sentencing court's use of particular Sentencing Guidelines Manual;

Claim Twenty-Three alleges a constitutional violation based on the sentencing court's

imposition of fines and restitution order; and Claim Twenty-Four alleges a constitutional

violation related to prior witness testimony on double jeopardy, collateral estoppel and

*res judicata* grounds.

## **STANDARD OF REVIEW**

There are four separate grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255:(1) The sentence was imposed in violation of the constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; and (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255.  *See United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992)(cert. denied, 504 U.S. 962, 112 S.Ct. 2319, 119 L.Ed.2d 238 (1992)).

"Challenging a conviction and sentence with a section 2255 motion is 'fundamentally different from a direct appeal.'"  *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir.1995) (*quoting United States v. Drobny,* 955 F.2d 990, 994 (5th Cir.1992)). "After conviction and exhaustion or waiver of any right to appeal, 'we are entitled to presume that [the defendant] stands fairly and finally convicted.'"  *United States v. Shaid*, 937 F.2d 228, 231-232 (5th Cir.1991)(cert. denied, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992) (en banc decision) (*quoting United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). "Thus, on collateral attack, a defendant is limited to alleging errors of a 'constitutional or jurisdictional magnitude.'"  *Samuels*, 59 F.3d at 528 (*quoting Shaid*, 937 F.2d at 232).

Relief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if

condoned, would result in a complete miscarriage of justice.  *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir.1992).  Non-constitutional claims that could have been raised on direct appeal may not be asserted in a 28 U.S.C. § 2255 proceeding.  *Id.*

**Procedural Default**

If a defendant alleges a fundamental constitutional error, he may not raise the issue for the first time in a § 2255 motion without showing both "cause" for his procedural default and "actual prejudice" resulting from the error.  *Shaid*, 937 F.2d at 232.  The cause and prejudice standard presents a significantly higher standard than the 'plain error' standard applied on direct appeal.  *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir.1992).  The only exception to the cause-and-prejudice test is when the failure to grant relief would result in a "manifest miscarriage of justice," i.e., in the "extraordinary case ... in which a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *See Shaid*, 937 F.2d at 232 (internal quotation marks omitted).  This showing of actual innocence must amount to factual innocence, not just legal insufficiency of the evidence which led to his conviction.  *United Sates v. Sorrells*, 145 F.3d 744 (5th Cir. 1998).

Ineffective assistance of counsel may sometimes constitute "cause" for failing to raise an issue on direct appeal.  *See United States v. Guerra*, 94 F.3d 989 (5th Cir. 1996).  The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."  U.S. CONST. Amend. VI.

8

The Supreme Court has addressed the issue of what a petitioner must prove to demonstrate an actual ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to show that counsel was ineffective a petitioner must demonstrate the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted in a breakdown of the adversarial process that renders the result unreliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

However, the "court need not address both prongs . . ., but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995). The Fifth Circuit has also held that "Counsel is not deficient for, and prejudice does not arise from, failure to raise a legally meritless claim." *Smith v. Puckett*, 907 F. 2d 581, 586 n.6 (5th Cir. 1990).

In order to demonstrate the first prong of this test, a petitioner must demonstrate that "'counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.'" *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir.1994) (*quoting Strickland*, 466 U.S. at 688, 104 S.Ct. 2052, 80 L.Ed.2d 674). In order to demonstrate the second prong of the test a petitioner must demonstrate that counsel's deficient performance so prejudiced the defense that petitioner was denied a fair and reliable

trial. *Lockhart* v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). A reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir.1992).

Movant, however, may not challenge sentencing issues in a motion to vacate his sentence. *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994). Relief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. *Vaughn*, 955 F.2d at 368. Further, a district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under 2255. *Id.*

## *APPRENDI* AND SENTENCING VIOLATIONS

### Claims 3-8:

In claims three through eight, Nix argues that he should not have been sentenced based upon findings by the sentencing court concerning his involvement in the Sherry murders because the murder elements were not charged in the indictment. He asserts that for the court to have done so is a violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Nix's life sentence was based upon 18 U.S.C. § 1963(a) which provides that a sentence of life may be imposed "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." Nix argues that because the jury did not specifically find him guilty of

10

the Sherry murders, the sentencing judge should not have imposed life but instead sentenced him to the lower penalty of twenty years provided by § 1963(a).

Nix's *Apprendi* argument is fatally flawed, however.  *Apprendi* was handed down June 26, 2000, while Nix's conviction became final upon the Supreme Court's denial of *certiorari* on February 22, 2000.  *See Nix v. United States*, 528 U.S. 1180 (Feb. 22, 2000).  The Fifth Circuit has held that *Apprendi* created a new rule of criminal procedure which was not retroactively applicable to petitions filed under § 2255.  *See United States v. Brown*, 305 F.3d 394 (5th Cir. 2002).

Further, to the extent Nix's argument is liberally construed to assert that his conviction and sentence are unconstitutional under the Supreme Court rulings in not only *Apprendi* but also *Blakely* v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and/or *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), his claim is without merit.  The Fifth Circuit has expressly addressed consideration of *Apprendi, Blakely* and *Booker* on collateral review:

> [I]t is clear that *Booker* has not been made retroactive to cases on collateral review by the Supreme Court.  The Supreme Court specifically did not so hold in *Booker*, nor has the Court done so in any case since *Booker*.  The same is true with respect to *Apprendi* and *Blakely*.  In fact, in *Booker*, the Court expressly held that both the Sixth Amendment holding and its remedial interpretation apply "to all cases on direct review."  125 S.Ct. at 769 (emphasis added).  The Court could have, but did not, make any reference to cases on collateral review.
>
> In addition, the Supreme Court has not rendered any decision or combination of decisions that, while not expressly making the rule of *Apprendi, Blakely* and *Booker* retroactive, "necessarily dictate[s] retroactivity" of that rule.  *Tyler,* 533 U.S. 656, 663, 121 S.Ct. 2478.  To the contrary, the Supreme Court has strongly suggested that *Apprendi* and, by logical extension, *Blakely* and *Booker* do not apply retroactively on collateral review.  *See Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 2526, 159 L.Ed.2d 442 (2004) (holding that *Ring*

11

> *v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which
> extended application of *Apprendi* to facts increasing a defendant's sentence from
> life imprisonment to death, does not apply retroactively to cases on collateral
> review).

*In re Elwood*, 408 F.3d 211, 213 (5th Cir. 2005).

The Fifth Circuit again recognized that the *Booker* decision does not apply

retroactively on collateral review to a first § 2255 motion in *United States v. Gentry*, 432

F.3d 600, 605 (5th Cir. 2005).  Thus, *Apprendi, Blakely* and *Booker* are not available to

Nix in this initial collateral review and Nix's grounds for review on all claims relating to

sentencing, the use of sentencing guidelines and to factual findings made by the court

instead of the jury are without merit and should be denied.


## INTERSTATE COMMERCE ISSUES

### Claims 9 and 10:

Nix argues in claims Nine and Ten that the RICO statutes require an enterprise

that "is engaged in or the activities of which affect interstate or foreign commerce."  18

U.S.C. § 1962(c) & (d).  Nix asserts that it was error for the trial court to instruct the jury

that "only a minimal effect on commerce is necessary."   This claim requires the court to

examine only whether trial and/or appellate counsel were ineffective in failing to

challenge whether the jury instruction concerning interstate commerce was proper and

whether the evidence was sufficient to support the jury's verdict.  All other aspects of

this claim should have been or were raised on direct appeal.

These claims are quickly disposed of.  The trial court gave the Fifth Circuit

Pattern Instructions on all issues concerning interstate commerce, without objection.

Nix cannot prevail on his claim of the appropriateness of the challenged instructions. Nor can he prevail on his claim as to the sufficiency of the evidence.  The evidence of the RICO enterprise was extensive and thorough.  The jury so found, the trial court so found on motion for new trial and the Fifth Circuit Court of Appeals so found.  The evidence of the interstate character and connection of Nix's various criminal enterprises supporting the RICO conviction was simply overwhelming.  Nix's conviction did not violate the Commerce Clause and thus his counsel could not have been ineffective.

## EX-POST FACTO ISSUES

**Claim 11:**

Nix argues in Claim Eleven that he should not have been sentenced to life imprisonment under counts 1 and 2 because the life penalty was added in 1988 after the murder of the Sherrys in 1987, on which it was based, thus violating the ex-post facto clause.  Nix misses the mark on this claim because he was convicted of RICO and RICO conspiracy in counts 1 and 2, not the Sherry murders.   The proof at trial was extensive that the conspiracy extended well past the 1988 amendment of the sentencing statute.  A penalty statute enacted or amended during an ongoing conspiracy applies to the conduct occurring after the passage or amendment.  *See United States v. Todd*, 735 F.2d 146 (5th Cir. 1984).

**Claims 12 and 13:**

Nix was convicted of counts 1 and 2 which contained Racketeering Act K involving obstruction of justice in violation of 18 U.S.C. § 1503 and § 2.  Nix argues that

the 1991 and 1994 amendments to § 1503 increased the penalty and added elements to the offense, the application of which led to an ex-post facto violation.  Nix's argument is irrelevant since his sentence on counts 1 and 2 was based on his involvement in the Sherry murders and not on the destruction of scam records, which related to the obstruction of justice charge.  This also negates his claim that he should not be punished for obstruction of justice related to the killing elements of § 1503 which were added after the murders.  To the extent that Nix is arguing for an *Apprendi* violation related to this claims, that is discussed above and such would be without merit.

**Claim 22:**

Nix argues in this claim that the sentencing court should have used the 1988-1989 Sentencing Guideline Book instead of the 1997 version because the fraud table would have placed his offense level at 8 instead of 10.  This is irrelevant since his sentence was governed by the murders, not the fraud.  It was not ineffective for counsel to not object to this at sentencing.

**Claims 1I and 1J:**

Nix argues in these two claims that his trial counsel failed to object and preserve non-harmless error related to the 1988 amendment to § 1963 which may have prevented the imposition of a life sentence on counts 1 and 2 and that this mistake adversely affected trial strategy and plea negotiations.  However, Nix's arguments on these two claims are far less than pellucid and certainly do not show that trial counsel failed to perform at an adequate or reasonable level.  As an aside, the government never offered nor entertained offering Nix a plea deal so any claims related to

14

interference with plea negotiations are simply specious.

## ISSUES PERTAINING TO CONSPIRACY TO ESCAPE CHARGE

**Claims 1K, 1L, 1O, 16 and 17:**

Nix argues, in these claims that trial counsel mis-argued *United States v. Edrington*, 726 F.2d 1029 (5th Cir. 1984), as it related to his objection to the escape portion of the indictment, count 18.  Nix also claims that this alleged defect invalidated counts 1, 2 and 51.  In support of this argument, Nix contends that the indictment had to allege that Nix was confined by Order of the Attorney General for conviction of an offense and that submission of this element in the jury instructions constituted an impermissible amendment of the indictment.

Contrary to Nix's assertions, this is precisely the argument that trial counsel made.  (Trial Trans. Vol 44, page 5345).  Nix was in fact charged with conspiracy to escape and there was no necessity to charge each element of the offense which was the object of the conspiracy.  The jury was properly charged on all of the elements of the charged conspiracy.  Nix's claims of ineffective assistance of counsel on these issues fail.  The balance of Nix's arguments related to these claims were resolved against him on direct appeal and are not properly before the court.

## POLYGRAPH ISSUES

### Claim 1 S:

Nix claims that his trial counsel was ineffective for failing to introduce evidence that he passed a polygraph examination related to the Sherry murders and that some of the government witnesses failed similar tests.  The polygraph results of several of the principals in this trial were a mixed bag.  Nix's co-defendants Halat and Sharpe failed theirs while Nix purportedly passed an examination administered by his examiner as to the particular questions he was asked about the Sherry murders.

The government witnesses who were given polygraph examinations ranged from truthful to untruthful to inconclusive.  The trial judge conducted a hearing on the motions of the various defendants relating to the admission of polygraph examination results. The judge advised the parties that if they sought the admission of such tests, a thorough hearing would be held to determine the reliability of the examinations in general and the specific reliability of each test as it was administered.  The judge then advised the parties that to the extent such tests were found reliable and admissible, all results would be admitted, including the failed examinations of Halat and Sharpe.

Nix's trial counsel, in conjunction with co-defendants' counsel, elected not to pursue the admissibility of the polygraph results.  This announcement was made in open court with Nix present, who made no objection.  Royals, Nix's counsel, did attempt to cross-examine the government witnesses about their failed results but was rebuffed by the trial judge upon objection by the government.  The evidentiary rulings of the trial judge are properly attacked on direct appeal and are not subject to collateral attack

16

here.  Thus, to the extent that Nix claims ineffective assistance of counsel based on this issue, it is without merit.  Nix's trial counsel strongly attempted to pursue this issue until rebuffed by adverse rulings by the trial judge and a trial strategy decision was made by all counsel not to pursue it any further in the presence of Nix and without his objection.


### ISSUES PERTAINING TO FAILURE TO INVESTIGATE OR UTILIZE INFORMATION PROVIDED BY NIX

**Claims 1D Through 1H and 1P:**

Nix claims that he gave his trial counsel the names of certain witnesses who could have disputed various government witnesses and called their veracity into question.  Specifically, Nix claims that he gave Royals the name of Clifford "Sham" Shamblin as a witness to dispute Mike Gillich's pretrial statement that he offered the Sherry murder contract to Shamblin.  Nix contends that Shamblin was not released from Angola until a year after the murders.  Nix also contends that Gillich "alluded" in some unidentified pretrial statement that he offered the contract on the Sherrys to a man named "Granger," but that Granger was dead at the time of the alleged contract offer.  Nix also contends that Royals failed to investigate and present evidence that Kenny Roy and Bobby Joe Faubian fabricated the entire missing scam money story. Nix asserts that other uncalled witnesses would have indicated that Judge Sherry was receiving threats from other people, not related to the scam run by Nix.

Nix also claims that voluminous materials and his opinions and theories offered to assist Royals in cross-examining and impeaching government witnesses were not properly utilized or offered into evidence.  He also contends that Royals failed to locate

17

files which the government allegedly "parked" with other agencies to avoid discovery and, again, that Royals failed to pursue the use of the polygraph examinations.

Claims of failure to investigate and failure to call witnesses requires more that generalities.  "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and hoe it would have altered the outcome of the trial."  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  The evidence must have been made known to defense counsel by defendant, and "must have been specific, admissible, and significant" in order for counsel's failure to investigate to be constitutionally deficient.  *Carter v. Johnson*, 131 F.3d 452, 465 (5th Cir. 1997).

"Recognizing that in 'failure to investigate' cases the temptations to rely on hindsight is strong, the Supreme Court stated that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *United States  v. Drones,* 218 F.3d 496, 500 (5th Cir. 2000)(*quoting Strickland*, 466 U.S. at 690).  Royals stated in his affidavit that he spent over one thousand hours, and investigated as many of the "dozens if not scores of names" that Nix mentioned as possible witnesses as he could.

In the end, however, the additional information must have been significant enough to alter the outcome of the trial.  "In order to satisfy the prejudice prong of *Strickland*, [a defendant] must show 'more than the mere possibility of a different outcome.' [He] must present 'evidence of sufficient quality and force to raise a reasonable probability that,' had it been presented to the jury, the outcome would have

18

been different." *Drones*, 218 F.3d 504 (citations omitted).  *See also Strickland*, 466 U.S. at 694.

In deciding whether the additional evidence would likely have changed the outcome, the strength of the evidence against the defendant is relevant.  *Drones,* 218 F.3d at 504.  In Nix's case, the remaining evidence of his guilt was simply overwhelming.  For instance, even if Nix is correct regarding the additional witnesses who could have impeached Gillich, it would have made no difference.  In response to Royals' and other defense counsels' cross-examination, Gillich was forced to admit that he had lied or was mistaken in prior statements given to law enforcement authorities.  Most certainly, the jury was apprised of many inconsistencies involving Gillich's testimony and various statements he had made including testimony from the 1991 trial.  One or several additional inconsistencies would have made no difference.

> [C]ounsel is "not required to pursue every path until it bears fruit or until all conceivable hope withers."  Further, as we noted in *Grey v. Lucas*, 677 F.2d 1086, 1093 n.5, 95th Cir. 1982), *cert. Denied*, 461 U.S. 910 (1983), while a lawyer's failure to investigate a witness who has been identified as crucial may indicate an inadequate investigation, the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance.  *Id.* at 1094.

*United States v. Cockrell*, 720 F.2d 1423, 1428 -29 (5th Cir. 1983).  *See also United States v. Carr*, 740 F.2d 339, 349 (5th Cir. 1984)('an attorney is under no duty to investigate frivolous, implausible, or meritless defenses.").

## OTHER CLAIMS

### Claim 14: Defective Reference to 18 U.S.C. § 2 in the Indictment

Nix asserts that the indictment was defective because it did not specify, in reference to section 2, whether it relied on § 2(a) or § 2(b).  This issue was for direct appeal only and is not available as a collateral attack except to the extent trial counsel's failure to argue it amounts to ineffectiveness.

However, an indictment need not reference § 2 in order for it to apply.  "Aiding and Abetting is not a separate offence, but is an alternative charge in every indictment, whether explicit or implicit."  *United States v. Neal*, 951 F.2d 630, 633 (5th Cir. 1992).  At trial, the court gave the Fifth Circuit Pattern Instruction for Aiding and Abetting which fully explained the elements of the offense.

Clearly, the indictment fully and fairly apprized Nix of what crimes he was alleged to have committed.  The indictment set forth in great detail how Nix, through money, coercion and influence was able to get others in the free world to do his bidding.  To the extent that Nix is arguing that Royals was ineffective in not pursuing this issue, it is without merit.  To the extent that Nix is arguing that *Apprendi* calls for a different outcome, that is also without merit based on the inapplicability of *Apprendi* as set forth above.

### Claim 15: Failure to Properly Charge Racketeering Act J(2) in the Indictment

Nix contends that Racketeering Act J(2) charged that he "caused others to travel" in interstate commerce to promote, etc. an unlawful activity.  He argues that §

1952 does not contain the language of "causing others" to travel and thus the only proper charge was actually aiding and abetting, but that the aiding and abetting language was omitted.  Nix argues here, as he did in Claim 14, that the failure to include the aiding and abetting language is fatal to this charge.  He also argues that the jury was not instructed on aiding and abetting at the "proper time."

As stated above, the law does not require the inclusion of the aiding and abetting language, specifically, so Nix's argument that this count was fatally flawed is without merit.  Likewise, his argument that the jury was not instructed at the "proper time" is without merit.  The jury was given the relevant portions of the aiding and abetting instruction as it related to the various counts of the indictment numerous times.  (Trial Trans. Vol. 44, pp. 5305, 5319-21, 5329-30).

## Claim 19: Prosecutorial Misconduct

Nix makes sweeping, and largely unsupported allegations of prosecutorial misconduct along with several specific instances of same which he contends prejudiced the outcome of the case.  He asks the court to incorporate an extensive pretrial motion to dismiss and memoranda on this issue, to which the government objects.  The trial court thoroughly considered this motion and found it to be without merit before the commencement of trial.  To allow the  incorporation of those pretrial proceedings would be improper and without legal justification.  The issues set forth in the pretrial motion and decided therein were properly the subject of the direct appeal and not reviewable here.  The request to incorporate those pretrial pleadings is denied.

Nix claims that the government violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose certain privileges and benefits

21

offered to various witnesses in exchange for their testimony.  The standards for a *Brady* violation are well settled.  In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87, 83 S.Ct. at 1196-97.  The Court further established in *Giglio v. United States,* 405 U.S. 150, 154-55, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), that: "when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the general rule of Brady....  *Id.* at 154-55, 92 S.Ct. at 766.

To establish a *Brady* claim, a habeas petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material.  *United States v. Ellender*, 947 F.2d 748, 756 (5th Cir.1991) (citations omitted).  In assessing the materiality of suppressed evidence, the Supreme Court explained that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *Id.*, at 682, 105 S.Ct. at 3383.  Recently, the Court further observed that a "reasonable probability" of a different result is shown when the non-disclosure "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict."  *Kyles v. Whitley*, 514 U.S. 419,  115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (footnote

22

omitted).  "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.*, 115 S.Ct. at 1566.  Finally, the materiality inquiry is applied to "the suppressed evidence collectively, not item-by-item." *Id.*, 115 S.Ct. at 1567.

Fifth Circuit decisions have expanded upon these statements, holding that "[t]he materiality of *Brady* evidence depends almost entirely on the value of the evidence relative to the other evidence mustered by the State." *Smith v. Black*, 904 F.2d 950, 967 (5th Cir.1990)(judgment vacated on other grounds, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992)).  "[W]hen the testimony of a witness who might have been impeached is strongly corroborated by additional evidence supporting a guilty verdict, the undisclosed evidence is generally not found to be material." *Wilson v. Whitley*, 28 F.3d 433, 439 (5th Cir. 1994)(cert. denied, 513 U.S. 1091, 115 S.Ct. 754, 130 L.Ed.2d 653 (1995).  Similarly, when the undisclosed evidence is merely cumulative of other evidence, no *Brady* violation occurs.  *See Allridge v. Scott*, 41 F.3d 213, 218 (5th Cir.1994)(cert. denied, 514 U.S. 1108, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995).

Nix also contends that the government sponsored perjured testimony from various witnesses in violation of *Napue v. People of State of Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).  In *Napue*, the Supreme Court held that a prosecutor's knowing use of, or deliberate failure to correct, perjured testimony, violates a defendant's Fourteenth Amendment rights.  360 U.S. at 271, 79 S.Ct. at 1178-79.  However, the Supreme Court also established that a defendant will only receive a new

trial if there is a reasonable likelihood that evidence of the perjury would have affected the guilty verdict.  *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

After a thorough review of the record, the court concludes that Nix's claims of prosecutorial misconduct are totally without merit.  In every case, the inconsistencies in the witnesses' testimony which Nix claims were perjury, were fully explored by defense counsel and, at times, even by government counsel.  There were no *Brady* violations and certainly no sponsoring of perjury by the government.  Further, the court concludes that Nix's claims, even if proven, would have not have affected the jury's verdict.

## Claim 20: Denial of Right to Self-Representation

Nix claims that he was denied the right to represent himself during the course of the trial.  This claim is shown to be totally devoid of merit by reference to the record. The record reveals that Nix never sought to represent himself nor asked that Royals be excused.  Nix did ask permission of the court to file four motions that Royals deemed meritless.  The court fully explored Nix's request before denying it and ordering him to file all motions through counsel.  (Trial Trans. Vol. 53, pp.8-21).  The court explained that to allow Nix to file his own pleadings and yet retain court-appointed counsel would result in "mass pandemonium."

After reviewing the pleadings Nix has filed herein, the court concurs entirely in that finding.  Further, in spite of Nix's protestations to the contrary, he was allowed to and did fully and personally participate in his defense during the course of the trial. (Trial Trans. Vol. 44, pp. 5349-52; Vol. 46, p. 5721).   When the trial court requested if Nix wanted it to relieve Royals of his representation of Nix, Nix responded that he was

satisfied with Royals and wanted to retain him as trial counsel.  This claims is specious.

## Claim 21: Double Jeopardy Violation at Sentencing

Under this claim, Nix asserts that his double jeopardy rights were violated when the sentencing court used the same conduct to find a level 43 violation under the guidelines for both his 1991 and 1997 sentences.  He also claims an *Apprendi* violation based on his sentence of life imprisonment under 18 U.S.C. § 1963(a).

As a preliminary matter, sentencing issues are not cognizable in a § 2255 action. *Segler*, 37 F.3d at 1134.  Further, *Apprendi* does not apply to this case.  *In re Elwood*, 408 F.3d at 213 .  Finally, the Fifth Circuit has affirmed that a base offense level of 43 and a life sentence were appropriate in this case.  *Sharpe*, 193 F.3d at 863-64.

## Claim 23: Restitution and Fine

Under this claim, Nix contends that the sentencing court should not have imposed a fine nor restitution since the presentence investigation report indicated that he did not have the financial ability to pay same.  This claim is not cognizable under § 2255 as to the fine imposed or the restitution ordered.  *United States v. Hatten*, 167 F.3d 884 (5th Cir. 1999).

## COLLATERAL ESTOPPEL ISSUES

## Claims 1N and 24: Issue Preclusion Regarding Bill Rhodes' Testimony

Nix claims, in this issue, that Royals was ineffective for failing to argue that since he (Nix) was acquitted of Count 4 in the 1991 indictment, which was based in part on Bill Rhodes' testimony, that Rhodes should not have been allowed to testify to the same

facts at the 1997 trial.  Count 4 of the 1991 indictment dealt with causing John Ransom

to travel in interstate commerce to commit murder for hire in violation of 18 U.S.C. §

1958.

Nix argues that this acquittal "served to break the continuation of the RICO

Racketeering conspiracy and the overarching nature of the alleged RICO enterprises."

However, the Fifth Circuit held on direct appeal that the proof established a single on-

going RICO enterprise and RICO conspiracy.  *Sharpe*, 193 F.3d at 865-66.  This issue

has been decided against Nix on direct appeal and he may not re-litigate it here.  *United

States* v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986).  Likewise, Nix's arguments of

collateral estoppel and *res judicata* are meritless.  *See Dowling v. United States*, 493

U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), and *United States v. Brackett*, 113

F.3d 1396 (5th Cir. 1997).

## OTHER INEFFECTIVE ASSISTANCE OF COUNSEL ISSUES

### Claim 1A: Royals' Representation of Andrew Gilich

In this claim, Nix asserts that Royals had a conflict of interest in that he had

previously represented Andrew Gilich, a government witness against Nix in this 1997

trial, when Gilich appeared before the grand jury that indicted Nix in the 1991 case.

Royals noted in his affidavit filed herein that he had forgotten about this very brief

representation of Gilich in which he secured an agreement from the government not to

prosecute Gilich in return for Gilich's testimony some several years before until

reminded of it by co-defendants' counsel during the course of this trial.  When Royals

informed the court and Nix of the representation, the court inquired of Nix as to whether or not he would waive this potential conflict.  Nix stated, unequivocally, that he would ant that he was "very satisfied" with Royals' representation of him.  (Trial Trans. Vol 34, pp. 3366-67).  The court accepted Nix's waiver in the exercise of its discretion and that waiver is fatal to this claim.  *See United States v. Plewniak*, 947 F.2d 1284 (5th Cir. 1991).

## Claim 1B: Pleading Nix Guilty in Opening Statement

In this claim, Nix contends that Royals' was ineffective in advising him that his best defense was to admit the scams and conspiracy to escape but deny the murders in the opening statement.  Nix now claims that this advise was ill-conceived because it was impossible for the jury to acquit him on the murder and RICO claims in the face of the his guilty admission on the scam and escape charges.

However, Nix chose this very strategy in the first Nix case in 1991, at least as to the scams wherein he admitted them in their entirety.  Royals did not represent Nix in that case and had no connection with it.  Royals has stated in his affidavit, and Nix concurred at the trial, that it would have been extremely damaging in front of the jury to deny the scams in this trial and have the damning proof of admission of the same from the 1991 trial presented to the jury.  Nevertheless, Nix argues that Royals was ineffective in not realizing that only a special verdict finding by the jury could have resulted in an acquittal on the RICO and murder charges and that Royals did not seek an advance ruling from the court that such a special verdict would be tendered to the jury.

Nix's argument on this claim fails.  The trial court had the absolute discretion as

27

to the granting of a special verdict form and could have reserved its ruling on whether or not to grant one until the close of the case, even if Royals had tried to tie the court's hands at the outset.  *See United States v. Valencia*, 957 F.2d 1189 (5th Cir. 1992)(overruled on other grounds, *United States v. Keith*, 230 F.3d 784 (5th Cir. 2000)). Further, the proof of both the escape and the scams was simply overwhelming.

**Claim 1C: Failure to Object to Government's Closing Argument**

Nix asserts, in this claim that Royals was ineffective for failing to object to the government's rebuttal closing that it was forced to call disreputable and seedy witnesses because those are the kinds of people the defendants associated with and for making references to the Bible.

This claim is totally without merit.  The government's argument was entirely within permissible latitudes .  *See United States v. Washington*, 44 F.3d 1271 (5th Cir. 1995).  Further, this particular rebuttal closing was in direct response to the closing argument of counsel for co-defendant Halat and his references to the Bible.

**Claims 1M and 18: Failure to Object to Alleged Improper Jury Instruction on Wire Fraud**

Nix alleges that Royals was ineffective for failing to object to the trial court's instruction on the elements of wire fraud under 21 U.S.C. § 843(b) instead of 18 U.S.C. § 1343, thus constructively amending the indictment.  Nix is wrong.   The court utilized Fifth Circuit Pattern Instruction 2.61, Wire Fraud, 18 U.S.C. § 1343, when instructing on the elements of wire fraud.  (Trial Trans. Vol. 44, pp. 5327-29).

**Claim 1Q: Failure to Exclude Reference to Insurance Fraud From Indictment**

Nix next claims that Royals was ineffective for failing to get the trial court to exclude any reference to 'insurance fraud" from the indictment.  Insurance fraud was listed in the indictment only as one of the means and methods of accomplishing the ends of the RICO enterprise without actually charging it.

There was ample testimony about the receipt of moneys from insurance fraud by the enterprise.  Nevertheless, the jury was instructed that Nix was not on trial for anything not charged in the indictment and the jury was instructed that no other "bad acts" of Nix could be considered in determining his guilt or innocence.  (Trial Trans. Vol. 44, pp. 5300-02).  Any attempt by Royals to have this excluded from the indictment would have been unsuccessful.

**Claim 1R: Failure to Seek Funds for Expert Witness**

Nix claims that Royals should have sought funds to hire an expert to testify "that the government's investigators and prosecutor's [sic] had launched a 'Blind Eye' investigation."  This claim is totally specious.  There were multiple theories advanced at trial for the murder of the Sherrys.  Royals and other defense counsel were afforded great latitude in attacking the motives for the murders argued by the government and did so with glee.  Failure to hire an expert to testify as Nix wishes can not be ineffective in that any such attempts would have proved fruitless and would have been met by the trial court with trepidation.

**Claims 1T and 1U: Failure to Object at Sentencing**

In this claim Nix complains that Royals failed; to raise an ex-post facto objection

to the life sentence; to argue as to the proper standard for evidentiary findings by the court; to argue as to the impropriety of relying on religious factors by the sentencing court; to argue that the court could not rely on Mike Gillich's testimony if it disbelieved any part of it; and to object to the validity of certain predicate acts in the indictment and certain counts thereof.  He also alleges that appellate counsel Stewart was ineffective for failing raise the issue of ineffective assistance of trial counsel on the sentencing issues.

Each of these issues has been dealt with substantively elsewhere and are without merit.  Further, Nix has failed to show that his sentence would have been any different even in the face of such objections.

**Claim 1V: Counsel Left the courtroom Without Nix's Permission**

Nix claims that Royals left the courtroom without his permission on one occasion, thus denying him his right to counsel.  Nix does not identify exactly when this one occasion was.  He does admit that Royals was absent from the courtroom with Nix's permission on some occasions when nothing of substance was occurring regarding Nix. This claims is without merit.

**Claim 2: Ineffective Assistance of Appellate Counsel**

Nix claims that appellate counsel, Stewart, was ineffective for failing to properly argue "dead-bang winners " on appeal such as the *Edrington* case and the "or life if" amendment to 18 U.S.C. § 1963(a).  He also alleges that she was ineffective for failing to seek a stay on Supreme Court *certiorari* pending a ruling on *Apprendi*.  These issues have been dealt with substantively and there is no merit to this claim.

30

After a through consideration of all of the issues presented in Nix's § 2255 petition, his amendments and briefs, the court finds that same should be Denied.

IT IS THEREFORE ORDERED AND ADJUDGED that the motion of the defendant, Kirksey McCord Nix, Jr., to vacate, set aside, or correct sentence by a person in federal custody pursuant to Title 28, U. S. Code § 2255 is Denied.

A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED, this the 7th day of March, 2007.


*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE