

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
OCT 2 2 1996
___ LIN CLERK
BY_____ DEPUTY

UNITED STATES OF AMERICA

VS.                                    CRIMINAL NO. 2:96 cr 30 PG

KIRKSEY McCORD NIX, JR.,               18 U.S.C. § 371
a/k/a J.R., a/k/a Junior,              18 U.S.C. § 1343
a/k/a Kirk                             18 U.S.C. § 1503
THOMAS LESLIE HOLCOMB,                 18 U.S.C. § 1512(b)(2)(A)
GLENN JOSEPH COOK,                     18 U.S.C. § 1956(a)(1)(A)(i)
PETER HALAT, JR.,                      18 U.S.C. § 1962(c)
SHERI LARA SHARPE                      18 U.S.C. § 1962(d)

The Grand Jury charges:

COUNT 1

The Enterprise

1. At all times material to this Indictment, from a date at
least as early as 1980 continuing into October, 1996, the
defendants, **KIRKSEY McCORD NIX, JR., aka J.R., aka Junior, aka
Kirk,** (hereinafter referred to as **NIX**), **GLENN JOSEPH COOK,**
(hereinafter referred to as **COOK**), **PETER HALAT, JR.,** (hereinafter
referred to as **HALAT**), **THOMAS LESLIE HOLCOMB** (hereinafter
referred to as **HOLCOMB**), Sheri LaRa Sharpe (hereinafter referred
to as Sharpe), and others known and unknown, were members and
associates of a criminal organization whose members and
associates engaged in acts of violence, including murder, fraud,
money laundering, obstruction of justice, and drug trafficking,

#1                    4

and which operated in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, and elsewhere.

2. This criminal organization, including its leadership, membership, and associates constituted an enterprise (hereinafter "the enterprise") as defined by 18 U.S.C. § 1961 (4), that is, a group of individuals associated in fact, the activities of which affected interstate and foreign commerce, which engaged in various criminal activities, consisting of the following acts indictable under Federal Law: 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1503 (obstruction of justice); 18 U.S.C. § 1512 (obstruction of justice); 18 U.S.C. § 1952(a) (interstate travel in aid of racketeering); 18 U.S.C. § 1956(a)(1)(A)(i) (money laundering); 21 U.S.C. § 841(a) (drug trafficking) and 21 U.S.C. § 846 (conspiracy to traffic drugs); and the following acts chargeable under the Laws of the State of Mississippi: Miss. Code of 1972, § 97-3-19 (murder); and Miss. Code of 1972, § 97-1-1 (conspiracy to commit murder).

3. The enterprise consisted of a collection of Louisiana State Prison inmates incarcerated at the Louisiana State Prison at Angola, Louisiana, (herinafter Angola), and other Louisiana prisons, together with numerous other incarcerated and "free world" accomplices.

4. From the beginning of the enterprise's existence its leader was defendant **NIX**, an Angola inmate serving a life sentence for murder. Uncharged co-conspirator Mike Gillich, Jr., operated several "strip joints" on the Mississippi Gulf Coast and

was a longtime friend of **NIX**. Defendant **HALAT** was an attorney in
Biloxi, Mississippi, introduced to **NIX** by Gillich, and who
subsequently performed services for **NIX** and other members of the
enterprise including, but not limited to, the receipt of moneys
generated by the enterprise and disbursements according to **NIX'S**
instructions.  Defendant **COOK**, who lived in Biloxi, Mississippi,
was a longtime friend and sometime employee of uncharged co-
conspirator Mike Gillich, Jr.  Defendant **HOLCOMB** was a longtime
associate of **COOK** and Gillich, who lived in Texas. Uncharged co-
conspirator Sharpe, who periodically lived in an Ocean Springs,
Mississippi, house owned by **NIX**, was a friend of **NIX'S** who posed
as a para-legal employed by defendant **HALAT**, and who performed
many services for **NIX** and other members of the enterprise.

<u>Purposes of the Enterprise</u>

5. The purposes of the enterprise included the following:

a. Enriching the members and associates of the enterprise
through, among other things, murder, fraud, and the distribution
of drugs.

b. Preserving and protecting the power and profits of the
enterprise through the use of intimidation, violence, threats of
violence, murder, and concealment.

c. Promoting and enhancing the enterprise and its members'
and associates' activities.

d. A purpose of the enterprise was to generate money for **NIX**
through illegal methods which he in turn: 1) accumulated for the

purpose of procuring his freedom from prison, 2) utilized to finance the illegal activities of the enterprise, and 3) distributed for the support of his friends, associates and relatives.

### Means and Methods of the Enterprise

6. Among the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a. Members of the enterprise and their associates conducted scams targeting homosexual and "lonely heart" victims on a national and international scale.

b. Members of the enterprise and their associates trafficked in drugs.

c. Members of the enterprise and their associates engaged in insurance fraud.

d. Members of the enterprise and their associates committed, attempted, and threatened to commit acts of violence, including murder, to protect and extend the enterprise's criminal operations.

e. Members of the enterprise and their associates accepted that a central tenet of the enterprise was the necessity of keeping the existence and purposes of the enterprise secret. To this end, NIX instructed enterprise members in the use of secret "codes" for communicating which were devised or refined by NIX. Further, members of the enterprise were expected to, and did, threaten one another and others with violence if they revealed

the existence or affairs of the enterprise. Further, members of
the enterprise were expected to, and did, destroy incriminating
evidence and lie to law enforcement investigators, grand juries
and trial juries, to hide the existence and affairs of the
enterprise.

### The Racketeering Violation

7.   From a date at least as early as 1980 continuing into
October, 1996, in Forrest County in the Hattiesburg Division of
the Southern District of Mississippi, and elsewhere, the
defendants herein, **NIX, COOK, HALAT, HOLCOMB**, and other persons
known and unknown, being persons employed by and associated with
the enterprise described in Paragraphs 1 through 6 above,
unlawfully, willfully, knowingly, and intentionally conspired to
violate 18 U.S.C. § 1962 (c), that is to conduct and participate,
directly and indirectly, in the conduct of the affairs of the
enterprise, through a pattern of racketeering activity, which
enterprise engaged in and its activities affected interstate
commerce, through a pattern of racketeering, that is, through the
commission of Racketeering Acts A through N as set out below.

It was part of the conspiracy that each defendant agreed to
the commission of at least two acts of racketeering in the
conduct of the affairs of the enterprise.

### OVERT ACTS

In furtherance of the racketeering conspiracy and to effect
the objects thereof, the defendants and their co-conspirators
committed the following overt acts, among others, in the Southern

District of Mississippi, and elsewhere:

    a. Each of the overt acts set out in Counts 18, 50, and 51 of this Indictment, which are incorporated by reference herein.

    b. On or about September 9, 1985, **HALAT** and Sharpe rented safety deposit box 253 from The Jefferson Bank in Biloxi, Mississippi.

    c. On or about May 30, 1986, Sharpe travelled to Jackson, Mississippi, where she met with John Ransom and received a silencer-equipped .22 caliber pistol.

    d. In the Fall of 1986, **HALAT** sent a series of affidavits to Angola falsely claiming to represent approximately a dozen Angola inmates and falsely claiming that Sharpe was a paralegal employed by him.

    e. On or about November 10, 1986, Sharpe attempted to smuggle marihuana and a photo of a young male used in the scam into **NIX** at Angola.

    f. On or about December 8, 1986, **HALAT** drove to Angola with a confederate where **HALAT** met with **NIX** and told him that Vincent Sherry had stolen **NIX'S** "buy-out" money.

    g. On or about December 8, 1986, **HALAT** informed a confederate that **NIX** had ordered the death of Vincent Sherry if Sherry did not return his money.

    h. In or about January 1987, **NIX** talked to John Ransom by telephone.

    i. On or about January 7, 1987, **HALAT** surrendered box 253 and rented safety deposit box 258 at The Jefferson Bank.

j. In April 1987, **NIX** possessed a list of scam victims.

k. In April 1987, **NIX** offered a $500.00 bribe to an Angola guard in an attempt to induce the guard into returning scam related documents he had taken from **NIX**, for which **NIX** caused a $500.00 check drawn on his account at the State National Bank of Eufaula, Oklahoma to be mailed to the guard.

l. On or about August 8, 1987, **NIX, COOK,** and **HALAT,** caused an associate to travel from the State of Louisiana to Biloxi, Mississippi, to discuss the murder of Circuit Judge Vincent Sherry.

m. In August 1987, a confederate delivered dilaudid to another accomplice at the request of **NIX**.

n. In the summer of 1987, **NIX** agreed with an accomplice to pay $20,000.00 to **HOLCOMB** for the murder of Judge Vincent Sherry and Margaret Sherry; **NIX** and the accomplice each agreed to pay half.

o. On or about July 15, 1987, **COOK** talked to **HOLCOMB** by telephone.

p. On or about August 22, 1987, **COOK** talked to **HOLCOMB** by telephone.

q. On or about September 10, 1987, **COOK** talked to **HOLCOMB** by telephone.

r. In late August or early September 1987, **HALAT** had a conversation with an accomplice, at the Golden Nugget complex in Biloxi, Ms., during which **HALAT** inquired about the status of the Sherry murder contract and offered to pay half.

s. In early September 1987, John Ransom was behind the Halat Law Office where he confronted a third person and asked him where Judge Vincent Sherry was.

t. On or about September 11-12, 1987, **HOLCOMB** traveled from the State of Texas to Biloxi, Mississippi, in order to murder Judge Vincent Sherry and Margaret Sherry.

u. On September 14, 1987, the day the Sherrys were murdered, at 2:45 p.m., **NIX** was requested to return a telephone call from **HALAT**.

v. On September 15, 1987, between 10:35 a.m. and 3:05 p.m., **NIX** was requested to return a telephone call from **HALAT**.

w. On September 16, 1987, the day the bodies of the Sherrys were discovered, at 4:00 p.m., **NIX** was requested to return a telephone call from **HALAT**.

x. On or about August 15, 1988, **NIX** caused a $1,500.00 cashier's check to be mailed to Biloxi, Mississippi, in part payment of a computer to be utilized to commit the within referenced wire fraud.

y. On or about February 1, 1989, **NIX** caused $2,400.00 in cash to be delivered to Biloxi, Mississippi, in part payment of a computer to be utilized to commit the wire fraud described herein.

z. That on or about the Spring of 1991, **HOLCOMB** travelled to Biloxi, Ms. and threatened another associate to keep that associate from cooperating with the authorities concerning the Sherry murders.

aa. On or about October 24, 1991, Sharpe testified falsely in the trial <u>United States of America vs. Kirksey McCord Nix, et. al.</u>, Cause No. S91-00040(P).

bb. On or about October 29, 1991, **HALAT** testified falsely in the trial <u>United States of America vs. Kirksey McCord Nix, et. al.</u>, Cause No. S91-00040(P).

<u>The Pattern of Racketeering Activity</u>

8. The pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1) and (5), consisted of the following acts:

<u>RACKETEERING ACT A</u>

The defendants **NIX, COOK, HALAT, HOLCOMB**, and others, committed the following acts, either one of which constituted the commission of Racketeering Act A:

(1) Between and including on or about December, 1986, and September, 1987, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, the defendants **NIX, COOK, HALAT, HOLCOMB**, and others, unlawfully, willfully, and knowingly conspired with each other and with persons known and unknown to the Grand Jury, to murder Mississippi Circuit Court Judge Vincent Sherry and Margaret Sherry in violation of Mississippi Code Section 97-1-1 (1972).

In furtherance of the conspiracy, and to accomplish the objects thereof, the following overt acts, among others, were committed:

<u>OVERT ACTS</u>

a. That on or about December 8, 1986, **HALAT** and a

*9*

confederate travelled from Biloxi, Mississippi, to Angola where
**HALAT** informed **NIX** that a large portion of money that **HALAT** had
been holding for **NIX** had been stolen by Judge Vincent Sherry.
During this conversation, **NIX** told **HALAT** that he would have Judge
Vincent Sherry killed if he did not return the money.

b. Sometime during the late Spring or Summer of 1987, Sharpe
delivered a silencer-equipped .22 pistol she had received from
John Ransom to a confederate, at **NIX'S** instructions.

c. Sometime during the late Spring or Summer of 1987, **COOK**
test fired the .22 caliber pistol mentioned in the preceding
overt act into the floor of his house.

d. That between December 1986, and September 1987, **NIX,**
**HALAT,** and **COOK,** together with Ransom and a confederate agreed
that they would arrange for someone to kill Judge Vincent Sherry
for $10,000.00.

e. That between on or about January and March, 1987, **HALAT**
and Ransom met on two occasions in Biloxi, Mississippi with a
third party to enlist that person's aid as a getaway driver for
Ransom to commit the murders of Judge Vincent Sherry and Margaret
Sherry.

f. That between on or about January and March, 1987, Ransom
and a confederate met in Biloxi, Mississippi with the third party
mentioned in the preceding overt act to enlist that person's aid
as a getaway driver for Ransom to commit the murders of Judge
Vincent Sherry and Margaret Sherry.

g. On or about July 15, 1987, **COOK** talked to **HOLCOMB** by

10

*/o*

telephone.

h. That on or about August, 1987, defendant **NIX** instructed a third party to travel from Louisiana to Mississippi and thereafter on August 9, 1987, a confederate and Ransom met with the third party in the vicinity of the Golden Nugget Lounge on Highway 90 in Biloxi, Mississippi, and discussed potential methods and means to kill Judge Vincent Sherry.

i. That between on or about August 9, 1987, and on or about September 11, 1987, defendant **COOK** agreed with **HOLCOMB** and a confederate to murder Judge Vincent Sherry for $20,000.00.

j. That between on or about August 9, 1987, and on or about September 11, 1987, a confederate of the defendants named in this Count spoke by telephone with **NIX** who agreed for **HOLCOMB** to commit the murder of Judge Vincent Sherry for $20,000.00.

k. On or about August 22, 1987, **COOK** talked to **HOLCOMB** by telephone.

l. On or about September 10, 1987, **COOK** talked to Holcomb by telephone.

m. That between on or about August 9, 1987, and on or about September 11, 1987, a confederate of the defendants named in this Count paid **HOLCOMB** approximately $4,000.00 to $5,000.00, plus past considerations, as a down payment for the murder of Judge Vincent Sherry.

n. That between on or about August 9, 1987, and on or about September 11, 1987, **HALAT** met with a confederate of the defendants named in this Count and offered to pay one half of the

11

$20,000.00 contract price for the murder of Judge Vincent Sherry.

o. On or about September 11-12, 1987, **HOLCOMB** drove from Texas to Mississippi, with the intent to murder Judge Vincent Sherry and Margaret Sherry for money.

p. On or about September 14, 1987, **COOK** and an associate stole a yellow Ford Fairmont from Dees Chevrolet in Biloxi, Mississippi, and together with others, prepared it for use in the murders of the Sherrys by, among other things, placing an altered license plate on it.

q. On or about September 14, 1987, **COOK**, **HOLCOMB**, and others test fired a silencer-equipped .22 pistol into the floor of the house where **HOLCOMB** was staying.

r. On or about September 14, 1987, defendant **COOK** drove to the residence of Judge Vincent Sherry and Margaret Sherry to point it out to **HOLCOMB**.

s. On or about September 14, 1987, **HOLCOMB** shot and killed Judge Vincent Sherry and Margaret Sherry.

t. On or about the last half of September, 1987, **COOK** travelled to Texas and paid **HOLCOMB** the balance of the contract price for murdering the Sherrys.


(2)   On or about September 14, 1987, in Harrison County in the Southern Division of the Southern District of Mississippi, the defendants **NIX, COOK, HALAT, HOLCOMB**, and others, unlawfully, intentionally, and knowingly murdered Vincent Sherry, in violation of Mississippi Code Section 97-3-19 (1972).

*12*

### RACKETEERING ACT B

On or about September 14, 1987, in Harrison County in the
Southern Division of the  Southern District of Mississippi, the
defendants **NIX, COOK, HALAT, HOLCOMB**, and others, unlawfully,
intentionally, and knowingly murdered Margaret Sherry, in
violation of Mississippi Code Section 97-3-19 (1972).

### RACKETEERING ACT C

1. That on or about 1985, and continuing into on or about
October, 1996, in Harrison County in the Southern Division of the
Southern District of Mississippi and elsewhere, the defendant **NIX**
and others, devised and intended to devise a scheme and artifice
to defraud and to obtain money by means of false and fraudulent
pretenses, representations and promises from persons known and
unknown to the Grand Jury, whereby those persons would be induced
to make wire transfers of funds via Western Union Money Order
wire transfers and/or interbank wire transfers to agents of the
defendant, the defendant well-knowing at the time that the
pretenses, representations and promises made to those persons
would be and were false when made, and which scheme and artifice
to defraud and to obtain money by means of false and fraudulent
pretenses, representations, and promises, so devised and intended
to be devised by defendants, was in substance as follows:

a.   That **NIX** and others acting at his direction, placed
advertisements in certain periodicals for the purpose of causing
others to respond in writing to help or assist a fictitious
person or a real person under false pretenses and circumstances.

13

b.    That **NIX** and others acting at his direction placed telephone calls to those responding to the advertisements, falsely representing themselves to be a person needing financial assistance for relocation, travel, housing, bond money and other expenses.

c.    That **NIX** and others acting at his direction requested and caused to be made wire transfers of funds by those who responded to the advertisements as described in the previous paragraph.

d. That **NIX** and others acting at his direction caused the funds transferred by wire to be picked up at locations both within and without the Southern District of Mississippi.

e. That **NIX** and others acting at his direction caused the funds picked up to be delivered to locations both within and without the Southern District of Mississippi, for the use and benefit of **NIX** and others.

2. That on or about the following dates, and between the following locations, **NIX** and others, for the purpose of executing the scheme and artifice to defraud and for obtaining funds by means of false and fraudulent pretenses, representations and promises, and attempting to do so, as described above, did knowingly cause to be transmitted in interstate commerce by means of wire communication, that is a telegraph line between Colorado, and locations within the Southern District of Mississippi, and elsewhere, certain signs, signals and sounds, any one of which constituted the commission of Racketeering Act C:

14

| DATE OF WIRE TRANSFER | TRANSFER FROM | TRANSFER TO | AMOUNT TRANSFERRED |
|---|---|---|---|
| (1) 1-17-86 | Colorado | Gulfport, Ms. | $1,500. |
| (2) 5-16-86 | Colorado | Escatawpa, Ms. | $5,000. |

In violation of Section 1343 and Section 2, Title 18, United States Code.

## RACKETEERING ACT D

1. Each and every allegation contained in paragraph 1 of Racketeering Act C of this Indictment is incorporated in this Racketeering Act D by reference herein.

2.   That on or about the following dates, and between the following locations, **NIX, HALAT,** and others, for the purpose of executing the scheme and artifice to defraud and for obtaining funds by means of false and fraudulent pretenses, representations and promises, and attempting to do so, as described above in Racketeering Act C, did knowingly cause to be transmitted in interstate commerce by means of wire communication, that is a telegraph line between Kansas, and locations within the Southern District of Mississippi, and elsewhere, certain signs, signals and sounds, any one of which constituted the commission of Racketeering Act D:

| DATE OF WIRE TRANSFER | TRANSFER FROM | TRANSFER TO | AMOUNT TRANSFERRED |
|---|---|---|---|
| (1)   4-9-86 | Kansas | New Orleans, La. | $675. |
| (2)   4-10-86 | Kansas | Escatawpa, Ms. | $1,260. |
| (3)   4-11-86 | Kansas | Biloxi, Ms. | $1,500. |

| (4)  | 4-11-86 | Kansas | New Orleans, La. | $1,500. |
| (5)  | 4-14-86 | Kansas | Biloxi, Ms. | $2,250. |
| (6)  | 4-15-86 | Kansas | Biloxi, Ms. | $1,750. |
| (7)  | 4-16-86 | Kansas | Gulfport, Ms. | $900. |
| (8)  | 4-17-86 | Kansas | Gulfport, Ms. | $900. |
| (9)  | 4-18-86 | Kansas | Escatawpa, Ms. | $1,000. |
| (10) | 4-21-86 | Kansas | Biloxi, Ms. | $1,260. |
| (11) | 4-23-86 | Kansas | Biloxi, Ms. | $3,125. |
| (12) | 4-24-86 | Kansas | Escatawpa, Ms. | $2,000. |
| (13) | 4-24-86 | Kansas | Escatawpa, Ms. | $2,000. |
| (14) | 4-25-86 | Kansas | Gulfport, Ms. | $1,500. |
| (15) | 4-28-86 | Kansas | Biloxi, Ms. | $2,250. |
| (16) | 4-28-86 | Kansas | New Orleans, La. | $1,500. |
| (17) | 4-29-86 | Kansas | Metairie, La. | $2,700. |
| (18) | 4-29-86 | Kansas | Escatawpa, Ms. | $2,000. |
| (19) | 4-29-86 | Kansas | Escatawpa, Ms. | $2,500. |
| (20) | 4-30-86 | Kansas | New Orleans, La. | $1,000. |

In violation of Section 1343 and Section 2, Title 18, United States Code.

<u>RACKETEERING ACT E</u>

1. Each and every allegation contained in paragraph 1 of Racketeering Act C of this Indictment is incorporated in this Racketeering Act E by reference herein.

2.   That on or about the following dates, and between the following locations, **NIX** and others, for the purpose of executing the scheme and artifice to defraud and for obtaining funds by means of false and fraudulent pretenses, representations and

16

promises, and attempting to do so, as described above in Racketeering Act C, did knowingly cause to be transmitted in interstate commerce by means of wire communication, that is a telegraph line between California, and Kenner, Louisiana, certain signs, signals and sounds, any one of which constituted the commission of Racketeering Act E:

| | DATE OF WIRE TRANSFER | TRANSFER FROM | TRANSFER TO | AMOUNT TRANSFERRED |
|---|---|---|---|---|
| (1) | 9-15-88 | California | Kenner, La. | $450. |
| (2) | 9-16-88 | California | Kenner, La. | $625. |
| (3) | 9-16-88 | California | Kenner, La. | $325. |
| (4) | 9-16-88 | California | Kenner, La. | $528. |
| (5) | 9-19-88 | California | Kenner, La. | $1,720. |
| (6) | 9-19-88 | California | Kenner, La. | $2,500. |
| (7) | 9-19-88 | California | Kenner, La. | $1,750. |
| (8) | 9-20-88 | California | Kenner, La. | $3,000. |
| (9) | 9-21-88 | California | Kenner, La. | $220. |
| (10) | 9-21-88 | California | Kenner, La. | $1,030. |
| (11) | 9-22-88 | California | Kenner, La. | $2,200. |
| (12) | 9-22-88 | California | Kenner, La. | $2,000. |

In violation of Section 1343 and Section 2, Title 18, United State Code.

<u>RACKETEERING ACT F</u>

1. Each and every allegation contained in paragraph 1 of Racketeering Act C of this Indictment is incorporated in this Racketeering Act F by reference herein.

2. **NIX** and others committed the following acts, any one of

*17*

which constituted the commission of Racketeering Act F:

(1) through (12). Acts by defendant **NIX** involving wire fraud which are indictable under Section 1343, Title 18, United States Code, as indicted and charged in Counts 22 through 33 hereafter of this Indictment, which are incorporated by reference in this Racketeering Act as though fully set forth herein:

| | |
|---|---|
| (1) Racketeering Act F | Count 22 |
| (2) Racketeering Act F | Count 23 |
| (3) Racketeering Act F | Count 24 |
| (4) Racketeering Act F | Count 25 |
| (5) Racketeering Act F | Count 26 |
| (6) Racketeering Act F | Count 27 |
| (7) Racketeering Act F | Count 28 |
| (8) Racketeering Act F | Count 29 |
| (9) Racketeering Act F | Count 30 |
| (10) Racketeering Act F | Count 31 |
| (11) Racketeering Act F | Count 32 |
| (12) Racketeering Act F | Count 33 |

(13) through (15). Acts by defendant **NIX** involving money laundering which are indictable under Section 1956(a)(1)(A)(i), Title 18, United States Code, as indicted and charged in Counts 19 through 21 hereafter of this Indictment, which are incorporated by reference in this Racketeering Act as though fully set forth herein:

| | |
|---|---|
| (13) Racketeering Act F | Count 19 |
| (14) Racketeering Act F | Count 20 |

*18*

(15) Racketeering Act F                    Count 21

## RACKETEERING ACT G

1. Each and every allegation contained in paragraph 1 of Racketeering Act C of this Indictment is incorporated in this Racketeering Act G by reference herein.

2. **NIX, HALAT,** and others committed the following acts, any one of which constituted the commission of Racketeering Act G:

(1) through (32).  That on or about the following dates, and between the following locations, **NIX,** for the purpose of executing the scheme and artifice to defraud and for obtaining funds by means of false and fraudulent pretenses, representations and promises, and attempting to do so, as described above in Racketeering Act C, did knowingly cause to be transmitted in interstate commerce by means of wire communication, that is a telegraph line between Canada, and divers other locations outside Canada, certain signs, signals and sounds, any one of which constituted the commission of Racketeering Act G:

|     | DATE OF WIRE TRANSFER | TRANSFER FROM | TRANSFER TO | AMOUNT TRANSFERRED |
| --- | --- | --- | --- | --- |
| (1) | 8-5-86   | Canada | U.S.        | $2,015. |
| (2) | 8-18-86  | Canada | U.S.        | $4,500. |
| (3) | 8-22-86  | Canada | Biloxi, Ms. | $2,150. |
| (4) | 8-27-86  | Canada | U.S.        | $2,150. |
| (5) | 9-4-86   | Canada | Biloxi, Ms. | $6,300. |
| (6) | 9-8-86   | Canada | U.S.        | $4,250. |
| (7) | 9-10-86  | Canada | U.S.        | $9,418. |
| (8) | 9-15-86  | Canada | U.S.        | $5,520. |

*19*

| (9) | 9-18-86 | Canada | U.S. | $6,420. |
| (10) | 9-23-86 | Canada | U.S. | $5,150. |
| (11) | 9-29-86 | Canada | U.S. | $5,150. |
| (12) | 10-1-86 | Canada | U.S. | $9,250. |
| (13) | 10-7-86 | Canada | U.S. | $3,250. |
| (14) | 10-14-86 | Canada | U.S. | $7,500. |
| (15) | 10-28-86 | Canada | U.S. | $2,750. |
| (16) | 12-11-86 | Canada | U.S. | $5,500. |
| (17) | 12-18-86 | Canada | U.S. | $3,750. |
| (18) | 1-27-87 | Canada | U.S. | $3,300. |
| (19) | 2-2-87 | Canada | U.S. | $1,900. |
| (20) | 2-8-88 | Canada | La. | $300. |
| (21) | 2-11-88 | Canada | La. | $250. |
| (22) | 2-12-88 | Canada | La. | $264. |
| (23) | 2-15-88 | Canada | La. | $500. |
| (24) | 2-17-88 | Canada | La. | $500. |
| (25) | 2-29-88 | Canada | La. | $343.41 |
| (26) | 3-8-88 | Canada | La. | $220.67 |
| (27) | 3-21-88 | Canada | La. | $249. |
| (28) | 3-30-88 | Canada | La. | $600. |
| (29) | 4-27-88 | Canada | La. | $4,038.77 |
| (30) | 5-3-88 | Canada | La. | $960. |
| (31) | 5-5-88 | Canada | La. | $2,000. |
| (32) | 5-17-88 | Canada | La. | $1,700. |

In violation of Section 1343 and Section 2, Title 18, United States Code.

(33) through (48).  Acts by **NIX** and others involving wire fraud which are indictable under Section 1343, Title 18, United States Code, as indicted and charged in Counts 34 through 49 hereafter of this Indictment, which are incorporated by reference in this Racketeering Act as though fully set forth herein:

(33) Racketeering Act G   Count 34

(34) Racketeering Act G   Count 35

(35) Racketeering Act G   Count 36

(36) Racketeering Act G   Count 37

(37) Racketeering Act G   Count 38

(38) Racketeering Act G   Count 39

(39) Racketeering Act G   Count 40

(40) Racketeering Act G   Count 41

(41) Racketeering Act G   Count 42

(42) Racketeering Act G   Count 43

(43) Racketeering Act G   Count 44

(44) Racketeering Act G   Count 45

(45) Racketeering Act G   Count 46

(46) Racketeering Act G   Count 47

(47) Racketeering Act G   Count 48

(48) Racketeering Act G   Count 49

## RACKETEERING ACT H

That within and including on or about the months of July 1986, through August, 1986, in Jackson County in the Southern Division of the Southern District of Mississippi, and elsewhere, **NIX** and others knowingly and willfully did conspire with persons

21

known and unknown to the grand jury to knowingly and intentionally possess with intent to distribute marihuana, as prohibited by Section 841(a)(1), Title 21, United States Code.

It was part of the conspiracy that the **NIX** and Sharpe negotiated, arranged and carried out through co-conspirators a transaction involving marihuana, the delivery of which took place in Jackson County, Mississippi, on or about the month of July, 1986.

All in violation of Section 846, Title 21, United States Code.

## RACKETEERING ACT I

That within and including on or about the months of July 1986, through August, 1986, in Jackson County in the Southern Division of the Southern District of Mississippi, and elsewhere, **NIX** and Sharpe knowingly and willfully did conspire with persons known and unknown to the grand jury to knowingly and intentionally possess with intent to distribute marihuana, as prohibited by Section 841(a)(1), Title 21, United States Code.

It was part of the conspiracy that the defendant **NIX** and Sharpe negotiated, arranged and carried out with co-conspirators a transaction involving marihuana, the delivery of which took place in Jackson County, Mississippi, on or about the months of July and August, 1986.

All in violation of Section 846, Title 21, United States Code.

22

## RACKETEERING ACT J

**NIX** and **COOK** committed the following acts, either one of which constituted the commission of Racketeering Act J:

(1) That from on or about October, 1986, and continuing through on or about April, 1987, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, **NIX** and **COOK** knowingly and willfully did conspire with persons known and unknown to the grand jury to knowingly and intentionally possess with intent to distribute marihuana, as prohibited by Section 841(a)(1), Title 21, United States Code.

It was part of the conspiracy that **NIX**, **COOK**, and other co-conspirators would arrange for the purchase of approximately 40 pounds of marihuana, for the transportation of the marihuana to Biloxi, Mississippi, and for its subsequent storage, possession and distribution during the period of the conspiracy.

All in violation of Section 846, Title 21, United States Code.

(2) On or about the month of November, 1986, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, **NIX** did cause other persons known and unknown to the grand jury to travel in interstate commerce from the State of Oklahoma to the State of Mississippi, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, the unlawful activity being a business enterprise involving the possession with intent to distribute and

the dispensing and distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1), and thereafter performed and attempted to perform acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of the unlawful activity, in violation of Section 1952(a) and Section 2, Title 18, United States Code.

RACKETEERING ACT K

That on or about the Spring of 1988, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, **HALAT** and **NIX** did knowingly and willfully corruptly endeavor to influence, obstruct and impede the due administration of justice, in that **HALAT** gave certain documents related to the wire fraud activities set out in paragraph 1 of Racketeering Act C of Count 1, the allegations of which are incorporated by reference herein, which **HALAT** was holding for defendant **NIX**, to a third party, so that the documents would not be found by law enforcement officials investigating the Sherrys' deaths, in violation of Section 1503 and Section 2, Title 18, United States Code.

RACKETEERING ACT L

**HALAT** committed the following acts, any one of which constituted the commission of Racketeering Act L:

(1)   An act of false testimony constituting obstruction of justice which is indictable under Section 1503, Title 18, United States Code, as indicted and charged in Count 12 hereafter, which is incorporated by reference in this Racketeering Act as though

24

fully set forth herein.

(2)  An act of false testimony constituting obstruction of justice which is indictable under Section 1503, Title 18 United States Code, as indicted and charged in Count 13 hereafter, which is incorporated by reference in this Racketeering Act as though fully set forth herein.

(3) An act of false testimony constituting obstruction of justice which is indictable under Section 1503, Title 18, United States Code, as indicted and charged in Count 14 hereafter, which is incorporated by reference in this Racketeering Act as though fully set forth herein.

(4) An act of false testimony constituting obstruction of justice which is indictable under Section 1503, Title 18, United States Code, as indicted and charged in Count 15 hereafter, which is incorporated by reference in this Racketeering Act as though fully set forth herein.

(5) An act of false testimony constituting obstruction of justice which is indictable under Section 1503, Title 18, United States Code, as indicted and charged in Count 16 hereafter, which is incorporated by reference in this Racketeering Act as though fully set forth herein.

(6) An act of false testimony constituting obstruction of justice which is indictable under Section 1503, Title 18, United States Code, as indicted and charged in Count 17 hereafter, which is incorporated by reference in this Racketeering Act as though fully set forth herein.

## RACKETEERING ACT M

**COOK** committed an act constituting obstruction of justice
which is indictable under 18 U.S.C. § 1512(b)(2)(A), as indicted
and charged in Count 52 hereafter, which is incorporated by
reference in this Racketeering Act as though fully set forth
herein.

## RACKETEERING ACT N

That on or about the Spring of 1991, in Harrison County in
the Southern Division of the Southern District of Mississippi,
**HOLCOMB** did knowingly intimidate, threaten, and attempt to
intimidate and threaten, another person with intent to cause and
induce that person to withhold testimony from an official
proceeding, in violation of Section 1512 (b)(2)(A), Title 18,
United States Code.

All in violation of Section 1962(d), Title 18, United States
Code.

### COUNT 2

1. Each and every allegation contained in paragraphs 1
through 6 and Racketeering Acts A-M of paragraph 8 of Count 1 of
this Indictment is incorporated in this Count 2 by reference
herein.

### The Racketeering Violation

2. From in or about 1980, continuing into October, 1996, in
Forrest County in the Hattiesburg Division of the Southern
District of Mississippi and elsewhere, the defendants, **KIRKSEY
McCORD NIX, JR., GLENN JOSEPH COOK, PETER HALAT, JR.**, and others

*26*

known and unknown, being persons employed by and associated with the enterprise described in Count 1, paragraphs 1 through 6, which was an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, willfully, and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, that is, through the commission of Racketeering Acts A through M as set forth in Count 1, paragraph 8.

All in violation of Section 1962(c), Title 18, United States Code.

### COUNT 3

That on or about October 24, 1991, in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, defendant **SHERI LARA SHARPE**, while a witness in the trial United States of America vs. Kirksey McCord Nix, et. al., Cause No. S91-00040(P) in the Southern District of Mississippi, knowingly, intentionally and corruptly endeavored to obstruct the due administration of justice by testifying falsely under oath at the trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **SHARPE**, while under oath at the trial, knowingly did testify falsely, as follows:

> QUESTION:  And you did not set up three-way calls?
>
> ANSWER: Never.  I never made a three-way call to any victim.

27

27

All in violation of Section 1503, Title 18, United States
Code.

## COUNT 4

That on or about October 24, 1991, in Forrest County in the
Hattiesburg Division of the Southern District of Mississippi,
defendant **SHERI LARA SHARPE**, while a witness in the trial <u>United
States of America vs. Kirksey McCord Nix, et. al.</u>, Cause No. S91-
00040(P) in the Southern District of Mississippi, knowingly,
intentionally and corruptly endeavored to obstruct the due
administration of justice by testifying falsely under oath at the
trial, in a manner that attempted to block the flow of truthful
information and impede justice.

That at the time and place aforesaid, **SHARPE**, while under
oath at the trial, knowingly did testify falsely as follows:

> Question: Did you participate in any way in the scam
> after Easter of 1986?

> ANSWER: No, sir.

All in violation of Section 1503, Title 18, United States
Code.

## COUNT 5

That on or about October 24, 1991, in Forrest County in the
Hattiesburg Division of the Southern District of Mississippi,
defendant **SHERI LARA SHARPE**, while a witness in the trial <u>United
States of America vs. Kirksey McCord Nix, et. al.</u>, Cause No. S91-
00040(P) in the Southern District of Mississippi, knowingly,
intentionally and corruptly endeavored to obstruct the due

administration of justice by testifying falsely under oath at the trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **SHARPE**, while under oath at the trial, knowingly did testify falsely as follows:

> QUESTION: Did you ever have occasion to deliver any money to Mr. Gillich?
>
> ANSWER: Never.

All in violation of Section 1503, Title 18, United States Code.

COUNT 6

That on or about October 24, 1991, in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, defendant **SHERI LARA SHARPE**, while a witness in the trial United States of America vs. Kirksey McCord Nix, et. al., Cause No. S91-00040(P) in the Southern District of Mississippi, knowingly, intentionally and corruptly endeavored to obstruct the due administration of justice by testifying falsely under oath at the trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **SHARPE**, while under oath at the trial, knowingly did testify falsely as follows:

> Q. Okay.  Again, to the best of your knowledge, was Gillich ever involved in that process?
>
> A. No, he was not.
>
> Q. Was Mr. Gillich involved in any other aspect of your participation in the scam?

29

A. Not to my knowledge, no.

All in violation of Section 1503, Title 18, United States Code.

### COUNT 7

That on or about October 24, 1991, in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, defendant **SHERI LARA SHARPE**, while a witness in the trial United States of America vs. Kirksey McCord Nix, et. al., Cause No. S91-00040(P) in the Southern District of Mississippi, knowingly, intentionally and corruptly endeavored to obstruct the due administration of justice by testifying falsely under oath at the trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **SHARPE**, while under oath at the trial, knowingly did testify falsely as follows:

> QUESTION: Did you ever use the legal materials in the Halat & Sherry office to enhance your participation in the scam?

> ANSWER: No, I did not.

All in violation of Section 1503, Title 18, United States Code.

### COUNT 8

That on or about October 24, 1991, in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, defendant **SHERI LARA SHARPE**, while a witness in the trial United States of America vs. Kirksey McCord Nix, et. al., Cause No. S91-00040(P) in the Southern District of Mississippi, knowingly,

intentionally and corruptly endeavored to obstruct the due administration of justice by testifying falsely under oath at the trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **SHARPE**, while under oath at the trial, knowingly did testify falsely as follows:

> QUESTION: Okay.  And have you ever possessed or been in the possession of a silencer?
>
> A. Never.

All in violation of Section 1503, Title 18, United States Code.

## COUNT 9

That on or about October 24, 1991, in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, defendant **SHERI LARA SHARPE**, while a witness in the trial United States of America vs. Kirksey McCord Nix, et. al., Cause No. S91-00040(P) in the Southern District of Mississippi, knowingly, intentionally and corruptly endeavored to obstruct the due administration of justice by testifying falsely under oath at the trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **SHARPE**, while under oath at the trial, knowingly did testify falsely as follows:

> QUESTION: Just to clarify one matter, did you ever receive a gun from John Ransom?
>
> ANSWER: No, I did not.

31

All in violation of Section 1503, Title 18, United States Code.

## COUNT 10

That on or about October 24, 1991, in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, defendant **SHERI LARA SHARPE**, while a witness in the trial United States of America vs. Kirksey McCord Nix, et. al., Cause No. S91-00040(P) in the Southern District of Mississippi, knowingly, intentionally and corruptly endeavored to obstruct the due administration of justice by testifying falsely under oath at the trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **SHARPE**, while under oath at the trial, knowingly did testify falsely as follows:

> Q. Did you ever, during the period that this scam was going on, ever discuss a scam in any manner or any fashion with Mike Gillich?
>
> A. No. I was ashamed.  I didn't talk about it to anybody.

All in violation of Section 1503, Title 18, United States Code.

## COUNT 11

That on or about October 24, 1991, in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, defendant **SHERI LARA SHARPE,** while a witness in the trial United States of America vs. Kirksey McCord Nix, et. al., Cause No. S91-00040(P) in the Southern District of Mississippi, knowingly,

32

intentionally and corruptly endeavored to obstruct the due administration of justice by testifying falsely under oath at the trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **SHARPE**, while under oath at the trial, knowingly did testify falsely as follows:

> Q. To the best, to the best of your
> knowledge, based on your participation in the
> scam, what was Pete Halat's
> knowledge of the scam?
>
> A. Absolutely none.

All in violation of Section 1503, Title 18, United States Code.

COUNT 12

That on or about October 29, 1991, in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, defendant **PETER HALAT, JR.**, while a witness in the trial <u>United States of America vs. Kirksey McCord Nix, et. al.</u>, Cause No. S91-00040(P) in the Southern District of Mississippi, knowingly, intentionally and corruptly endeavored to obstruct the due administration of justice by testifying falsely under oath at the trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **HALAT**, while under oath at the trial, knowingly did testify falsely as follows:

> Q. Do you ever recall making a statement to
> the effect: That you better -- to Kellye Nix
> -- that you better tell Kirksey to leave

33

those homosexuals alone?

* * *

A. I do not recall having made that statement
to Kellye Dawn Nix.  And assuming that I
would have made that statement, I would not
have used the word "homosexual" which leads
me to believe that I did not say that
to Kellye Dawn Nix.

Q. Did you ever make a statement that: I told
you those homosexuals would get you in
trouble?

A. No, sir.

All in violation of Section 1503, Title 18, United States
Code.

### COUNT 13

That on or about October 29, 1991, in Forrest County in the
Hattiesburg Division of the Southern District of Mississippi,
defendant **PETER HALAT, JR.,** while a witness in the trial United
States of America vs. Kirksey McCord Nix, et. al., Cause No. S91-
00040(P) in the Southern District of Mississippi, knowingly,
intentionally and corruptly endeavored to obstruct the due
administration of justice by testifying falsely under oath at the
trial, in a manner that attempted to block the flow of truthful
information and impede justice.

That at the time and place aforesaid, **HALAT,** while under
oath at the trial, knowingly did testify falsely as follows:

QUESTION: Do you ever recall receiving any
cash personally from Bob Wright?

A. No.

All in violation of Section 1503, Title 18, United States

Code.

## COUNT 14

That on or about October 29, 1991, in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, defendant **PETER HALAT, JR.**, while a witness in the trial <u>United States of America vs. Kirksey McCord Nix, et. al.</u>, Cause No. S91-00040(P) in the Southern District of Mississippi, knowingly, intentionally and corruptly endeavored to obstruct the due administration of justice by testifying falsely under oath at the trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **HALAT**, while under oath at the trial, knowingly did testify falsely as follows:

> QUESTION: Were you familiar with Mr. Brown or his reputation before that time?
>
> A. The only thing I knew about Ossie Brown at the time was that he had served as the district attorney in the Eastern District of Baton Rouge Parish, somewhere over there. That he had been indicted on some sort of obstruction of justice charge, subsequently acquitted, that he was then in private practice by himself in Baton Rouge, Louisiana.
>
> Q. Would you know what offices his wife held?
>
> A. No, sir.  I think she was on the parole, pardon board, but I didn't know that at the time.

All in violation of Section 1503, Title 18, United States Code.

## COUNT 15

That on or about October 29, 1991, in Forrest County in the

35

Hattiesburg Division of the Southern District of Mississippi,

defendant **PETER HALAT, JR.,** while as a witness in the trial

<u>United States of America vs. Kirksey McCord Nix, et. al.,</u> Cause

No. S91-00040(P) in the Southern District of Mississippi,

knowingly, intentionally and corruptly endeavored to obstruct the

due administration of justice by testifying falsely under oath at

the trial, in a manner that attempted to block the flow of

truthful information and impede justice.

That at the time and place aforesaid, **HALAT,**

while under oath at the trial, knowingly did testify falsely as

follows:

> QUESTION: In March of 1987 -- we'll get to
> the other times later -- did you meet with
> Bill Rhodes in Biloxi, Mississippi?
>
> ANSWER: I have never met Bill Rhodes
> in Biloxi, Mississippi, in March of 1987 or
> in any other month of any other year during
> my lifetime.

All in violation of Section 1503, Title 18, United States

Code.

## COUNT 16

That on or about October 29, 1991, in Forrest County in the

Hattiesburg Division of the Southern District of Mississippi,

defendant **PETER HALAT, JR.,** while a witness in the trial <u>United</u>

<u>States of America vs. Kirksey McCord Nix, et. al.,</u> Cause No. S91-

00040(P) in the Southern District of Mississippi, knowingly,

intentionally and corruptly endeavored to obstruct the due

administration of justice by testifying falsely under oath at the

trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **HALAT**, while under oath at the trial, knowingly did testify falsely as follows:

> QUESTION: At some point in time, did you come to learn whether or not there was a scam, homosexual scam operating out of Angola in which Kirksey Nix was involved?
>
> A. I came to find out that there was activity going on at Angola prison that Kirksey Nix was alleged to be involved in.
>
> Q. When did that happen?
>
> A. May of 1988.
>
> \* \* \*
>
> Q. As of that date or as of the time you received the information from the F.B.I., whatever date that was prior to May 13th, 1988, what knowledge did you have of your office being used, if it was used, as a depositor of scam funds?
>
> A. I don't believe my office was being used as a depository of scam funds.

All in violation of Section 1503, Title 18, United States Code.

### COUNT 17

That on or about October 29, 1991, in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, defendant **PETER HALAT, JR.**, while a witness in the trial <u>United States of America vs. Kirksey McCord Nix, et. al.</u>, Cause No. S91-00040(P) in the Southern District of Mississippi, knowingly,

intentionally and corruptly endeavored to obstruct the due administration of justice by testifying falsely under oath at the trial, in a manner that attempted to block the flow of truthful information and impede justice.

That at the time and place aforesaid, **HALAT**, while under oath at the trial, knowingly did testify falsely as follows:

> QUESTION: What knowledge do you have of any complaint made that either you or Vincent Sherry were involved in missing money, either the figure of 200,000, 500,000 or $700,000? What knowledge?
>
> A. Missing from where?
>
> Q. I -- missing money.
>
> A. Neither Vince nor I were ever or have ever been involved in any missing money from any source whatsoever.
>
> Q. When was the first time you heard of that allegation?
>
> A. Sometime around the first of August in 1989, ... .

All in violation of Section 1503, Title 18, United States Code.

## COUNT 18

Between on or about March, 1992, and June, 1992, in Forrest County in the Hattiesburg Division of the Southern District of Mississippi, and elsewhere, the defendant **KIRKSEY McCORD NIX, JR.**, and other persons known and unknown to the Grand Jury, did knowingly and willfully conspire with each other, and with persons known and unknown to the Grand Jury, to effect the escape of **NIX** and others from an institution to which they were lawfully

confined by direction of the Attorney General, in violation of 18 U.S.C. § 751(a).

It was a part of the conspiracy that the co-defendants, co-conspirators and confederates contact a victim of the wire fraud scam set out in Counts 22 through 33 of this Indictment through the use of various long distance telephone calling cards, three way calls, and collect calls, and through fraud and deceit induce him to send money by Western Union Money Transfer orders to the conspirators.

It was further a part of the conspiracy that the co-defendants, co-conspirators and confederates use a portion of the money accumulated to repair a vehicle and stock it with clothes, food, camping gear, money, and other items useful in an escape, and arrange to have the vehicle left at a location near the Harrison County Jail.

In furtherance of the conspiracy, and to accomplish the objects thereof, the following overt acts, among others, were committed:

OVERT ACTS

1. On diverse dates between March 26, 1992, and June 23, 1992, **NIX**, and other individuals acting on his instructions placed collect, third party, and credit card charged telephone calls from the Harrison County Jail and the Forrest County Jail to a victim in Kingston, New York.

2. On May 26, 1992, the victim wired $380.00 from Kingston, New York, directed to Little Rock, Arkansas, but picked up in

39

Chalmette, Louisiana, at the request of **NIX**, or someone acting on his behalf, which was picked up by an associate of **NIX**.

3. On May 26, 1992, the victim wired $338.00 from Kingston, New York, directed to Little Rock, Arkansas, but picked up in Chalmette, Louisiana, at the request of **NIX**, or someone acting on his behalf, which was picked up by an associate of **NIX**.

4. On May 27, 1992, an associate of **NIX'S** called Hall's Wrecker Service in Gulfport, Mississippi, and had them tow a 1974 Lincoln Continental to their facility for repairs.

5. On May 28, 1992, the victim wired $600.00 from Kingston, New York, to Mary Hall of Hall's Wrecker Service in Gulfport, Mississippi, at the request of **NIX**, or someone acting on his behalf to pay for the repairs to the Lincoln Continental. After receiving the payment, Hall's Wrecker Service delivered the car to the Wal-Mart in Gulfport, Mississippi, at the instructions of an associate of **NIX**.

6. On or about May 29, 1992, an associate of **NIX** spoke by telephone with various Wal-Mart employees and ordered approximately $900.00 worth of camping equipment, food, and clothes which he instructed them to place in the trunk of the Lincoln Continental.

7. On May 29, 1992, an associate of **NIX** called Wal-Mart and arranged to have additional repairs on the vehicle.

8. On May 29, 1992, the victim attempted to wire $552.00 from Kingston, New York, to Gulfport, Mississippi, at the request of **NIX**, or someone acting on his behalf. This transfer was not

completed and the money was returned by Western Union to the victim.

9. On June 1, 1992, in order to complete the transaction attempted in the preceding overt act, and upon instructions from **NIX**, or someone acting on his behalf, the victim mailed a Money Order in the amount of $552.00 from the Albany Savings Bank to an employee of Wal-Mart in Gulfport, Mississippi, to pay for the vehicle repairs.

10. On or about May 31, 1992, an individual visited an associate of **NIX** at the Harrison County Jail. On diverse dates for some two to three weeks thereafter, this individual spoke by phone with an associate of **NIX** and **NIX**, and subsequently performed various services for them.

11. On June 9, 1992, the victim wired $400.00 from Kingston, New York, to Gulfport, Mississippi, at the request of **NIX**, or someone acting on his behalf, which was picked up by an associate of **NIX'S**.

12. On June 10, 1992, the victim wired $338.00 from Kingston, New York, to Gulfport, Mississippi, at the request of **NIX**, or someone acting on his behalf, which was picked up by an associate of **NIX'S**.

13. On June 10, 1992, the victim wired $445.00 from Kingston, New York, to Gulfport, Mississippi, at the request of **NIX**, or someone acting on his behalf, which was picked up by an associate of **NIX'S**.

14. On June 10, 1992, **NIX** and an associate of **NIX'S** caused

41

$920.00 to be wired from The First National Bank of St. Bernard Parish to Deposit Guaranty National Bank in Gulfport for an employee of Wal-Mart to receive to pay for camping gear, food, and clothes purchased from Wal-Mart.

15. On June 11, 1992, the victim wired $750.00 from Kingston, New York, to Gulfport, Mississippi, at the request of **NIX**, or someone acting on his behalf, which was picked up by an associate of **NIX'S**.

16. On June 11, 1992, the victim wired $1,000.00 from Kingston, New York, to Gulfport, Mississippi, at the request of **NIX**, or someone acting on his behalf, which was picked up by an associate of **NIX'S**.

17. On June 12, 1992, the victim wired $1,500.00 from Kingston, New York, to Gulfport, Mississippi, at the request of **NIX**, or someone acting on his behalf, which was picked up by an associate of **NIX'S**.

18. On June 12, 1992, the victim wired $1,500.00 from Kingston, New York, to Gulfport, Mississippi, at the request of **NIX**, or someone acting on his behalf, which was picked up by an associate of **NIX'S**.

19. On June 12, 1992, the victim wired $1,500.00 from Kingston, New York, to Gulfport, Mississippi, at the request of **NIX**, or someone acting on his behalf, which was picked up by an associate of **NIX'S**.

20. On June 12, 1992, associates of **NIX** picked up the Lincoln Continental from Wal-Mart.

21. On June 16, 1992, associates of **NIX** took a police scanner to the Wal-Mart, representing that it had been purchased at Wal-Mart and received a refund for it. Wal-Mart officials subsequently determined that the police scanner had not been purchased at Wal-Mart.

22. On some date in the first half of June, 1992, associates of **NIX** rented a mini-storage unit in Gulfport, Mississippi, and on or after June 12, 1992, they stored the camping gear, food, and clothes, along with the police scanner in it at the instructions of **NIX** and an associate of **NIX**.

23. On or after June 16, 1992, associates of **NIX** parked the Lincoln Continental at the Harrison County Jail at the instructions of **NIX** and an associate of **NIX**.

24. On various dates in June, 1992, an associate of **NIX** was present at the Harrison County Detention Facility, dressed as an inmate, for the purpose of removing pins from a door leading from the jail.

All in violation of Section 371, Title 18, United States Code.

## COUNT 19

On or about May 28, 1992, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, the defendant **KIRKSEY McCORD NIX, JR.**, aided and abetted by others, did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, causing $600.00 which had been wired by Western Union from a

victim of the wire fraud set out in Counts 22 through 33 of this
Indictment, the allegations of which are incorporated as if fully
set forth herein, to Hall's Wrecker Service and applied to pay a
bill for services rendered to repair a Lincoln Continental, which
involved the proceeds of a specified unlawful activity, that is
wire fraud in violation of 18 U.S.C. § 1343, with the intent to
promote the carrying on of said specified unlawful activity and
that while conducting and attempting to conduct such financial
transaction knew that the property involved in the financial
transaction, that is funds being wired and subsequently applied
to pay for the repairs, represented the proceeds of some form of
unlawful activity.

All in violation of Section 1956(a)(1)(A)(i) and Section 2,
Title 18, United States Code.

### COUNT 20

On or about June 1, 1992, in Harrison County in the Southern
Division of the Southern District of Mississippi, and elsewhere,
the defendant **KIRKSEY McCORD NIX, JR.**, aided and abetted by
others, did knowingly and willfully conduct and attempt to
conduct a financial transaction affecting interstate commerce, to
wit, causing a $552.00 money order which had been mailed from a
victim of the wire fraud set out in Counts 22 through 33 of this
Indictment, the allegations of which are incorporated as if fully
set forth herein, to an employee of Wal-Mart in Gulfport,
Mississippi, to be applied to pay a bill for services rendered to
repair a Lincoln Continental, which involved the proceeds of a

specified unlawful activity, that is wire fraud in violation of 18 U.S.C. § 1343, with the intent to promote the carrying on of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is funds being wired and subsequently applied to pay for the repairs, represented the proceeds of some form of unlawful activity.

All in violation of Section 1956(a)(1)(A)(i) and Section 2, Title 18, United States Code.

### COUNT 21

On or about June 10, 1992, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, the defendant **KIRKSEY McCORD NIX, JR.,** aided and abetted by others, did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, causing $920.00 which had been wired by Western Union from a victim of the wire fraud set out in Counts 22 through 33 of this Indictment, the allegations of which are incorporated as if fully set forth herein, to be wired from The First National Bank of St. Bernard Parish, Louisiana, to Deposit Guaranty National Bank in Gulfport, Mississippi, for an employee of Wal-Mart in Gulfport, Mississippi, to be applied to pay a bill for camping gear, food, and clothes furnished by Wal-Mart, which involved the proceeds of a specified unlawful activity, that is wire fraud, with the intent to promote the carrying on of said specified unlawful activity and that while conducting and

attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is funds being wired and subsequently applied to pay for the repairs, represented the proceeds of some form of unlawful activity.

All in violation of Section 1956(a)(1)(A)(i) and Section 2, Title 18, United States Code.

COUNTS 22 through 33

1. Each and every allegation contained in paragraph 1 of Racketeering Act C of Count 1 of this Indictment is incorporated in these Counts by reference herein.

2. That on or about the following dates, in the following locations and elsewhere, the defendant **KIRKSEY MCCORD NIX, JR.**, and others, for the purpose of executing the scheme and artifice to defraud and for obtaining by means of false and fraudulent pretenses, representations and promises, and attempting to do so, as described above, did knowingly cause to be transmitted in interstate commerce by means of wire communication, that is, telephone and telegraph lines between the locations set out hereafter, certain signs, signals and sounds.  The allegations of this paragraph 2, and the preceding paragraph 1, are incorporated by reference in each of the following Counts 22 through 33 as if fully set forth therein.

| COUNT | DATE OF TELEPHONE CALL | CALL FROM | CALL TO |
|---|---|---|---|
| 22 | 5-15-92 | Gulfport, Ms. | New York |
| 23 | 5-18-92 | Gulfport, Ms. | New York |

46

| COUNT | DATE OF WIRE TRANSFER | TRANSFER FROM | TRANSFER TO | AMOUNT TRANSFERRED |
|-------|-----------------------|---------------|-------------|--------------------|
| 24 | 5-28-92 | New York | Gulfport, Ms. | $600.00 |
| 25 | 5-29-92 | New York | Gulfport, Ms. | $552.00 |
| 26 | 6-9-92 | New York | Gulfport, Ms. | $400.00 |
| 27 | 6-10-92 | New York | Gulfport, Ms. | $338.00 |
| 28 | 6-10-92 | New York | Gulfport, Ms. | $445.00 |
| 29 | 6-11-92 | New York | Gulfport, Ms. | $750.00 |
| 30 | 6-11-92 | New York | Gulfport, Ms. | $1,000.00 |
| 31 | 6-12-92 | New York | Gulfport, Ms. | $1,500.00 |
| 32 | 6-12-92 | New York | Gulfport, Ms. | $1,500.00 |
| 33 | 6-12-92 | New York | Gulfport, Ms. | $1,500.00 |

In violation of Section 1343 and Section 2, Title 18, United States Code.

## COUNTS 34 through 49

1. Each and every allegation contained in paragraph 1 of Racketeering Act C of Count 1 of this Indictment is incorporated in these Counts by reference herein.

2. That on or about the following dates, in the following locations and elsewhere, the defendant, **KIRKSEY MCCORD NIX, JR.,** and others, for the purpose of executing the scheme and artifice to defraud and for obtaining by means of false and fraudulent pretenses, representations and promises, and attempting to do so, as described above, did knowingly cause to be transmitted in interstate commerce by means of wire communication, that is, telephone and telegraph lines between the locations set out

47

hereafter, certain signs, signals and sounds.   The allegations of this paragraph 2, and the preceding paragraph 1, are incorporated by reference in each of the following Counts 34 through 49 as if fully set forth therein.

| COUNT | DATE OF TELEPHONE CALL | CALL FROM | CALL TO |
|---|---|---|---|
| 34 | 6-1-92 | Gulfport, Ms. | Canada |
| 35 | 6-2-92 | Gulfport, Ms. | Canada |
| 36 | 6-3-92 | Gulfport, Ms. | Canada |
| 37 | 6-3-92 | Gulfport, Ms. | Canada |
| 38 | 6-4-92 | Gulfport, Ms. | Canada |
| 39 | 6-5-92 | Gulfport, Ms. | Canada |
| 40 | 6-8-92 | Gulfport, Ms. | Canada |
| 41 | 6-9-92 | Gulfport, Ms. | Canada |
| 42 | 6-10-92 | Gulfport, Ms. | Canada |
| 43 | 6-10-92 | Gulfport Ms. | Canada |
| 44 | 6-11-92 | Gulfport, Ms. | Canada |
| 45 | 6-12-92 | Gulfport, Ms. | Canada |
| 46 | 6-12-92 | Gulfport, Ms. | Canada |
| 47 | 6-12-92 | Gulfport, Ms. | Canada |
| 48 | 6-16-92 | Gulfport, Ms. | Canada |
| 49 | 6-16-92 | Gulfport, Ms. | Canada |

In violation of Section 1343 and Section 2, Title 18, United States Code.

## COUNT 50

From on or about September, 1987, to on or about July, 1994,

48

in Forrest County, in the Hattiesburg Division of the Southern
District of Mississippi, and elsewhere, the defendants **KIRKSEY
McCORD NIX, JR., PETER HALAT, JR., THOMAS LESLIE HOLCOMB, GLENN
JOSEPH COOK,** and **SHERI LARA SHARPE,** did knowingly and willfully
conspire with each other and with others known and unknown to the
Grand Jury, to corruptly endeavor to influence, obstruct and
impede the due administration of justice regarding the
investigation of the wire fraud scheme orchestrated by **NIX** and
the murders of Judge Vincent Sherry and Margaret Sherry, in
violation of 18 U.S.C. § 1503.

It was part of the conspiracy that the defendants would lie
and cause and attempt to cause their confederates to lie to
Federal Bureau of Investigation Agents and other authorities
investigating the wire fraud and murders.

It was part of the conspiracy that the defendants would
destroy and attempt to destroy evidence of the wire fraud and
murders for hire to keep it out of the hands of law enforcement
investigators.

It was part of the conspiracy that the defendants would
knowingly, intentionally and corruptly endeavor to obstruct the
due administration of justice by testifying falsely under oath
before the federal grand juries investigating the wire fraud and
murders for hire in a manner that attempted to block the flow of
truthful information and impede justice, and attempt to get
others to do so.

It was part of the conspiracy that the defendants would

knowingly, intentionally and corruptly endeavor to obstruct the due administration of justice by testifying falsely under oath at the trial, in Criminal No. S90-00040(P), in a manner that attempted to block the flow of truthful information and impede justice, and attempt to get others to do so.

It was further a part of the conspiracy that the defendants, their co-conspirators, and their confederates would cover up and conceal the objectives of the conspiracy and their involvement therein.

In furtherance of the conspiracy, and to accomplish the objectives thereof, one or more of the following overt acts, among others, were committed:

### OVERT ACTS

1. On or about the last half of September, 1987, **HALAT** took records relating to the wire fraud to an individual, said that law enforcement officials investigating the deaths of Vincent Sherry and Margaret Sherry would be going through his law office records, and asked that individual to see what **NIX** wanted done with them so that they would not fall into the hands of law enforcement officials.

2. Shortly thereafter, the individual mentioned in Overt Act 1 spoke with **NIX** and then complied with **NIX'S** instructions to destroy the records.

3. On or about October 23, 1987, **SHARPE** spoke by telephone with a confederate and attempted to persuade him to lie to Federal Bureau of Investigation Agents about the wire fraud scam,

as another confederate had already done.

4. On or about November 1987, John Ransom met with a third person in Georgia and warned him not to say anything about the Sherry murders.

5. In the Spring of 1988, **HALAT** took files he maintained for **NIX**, including trust account records, to an individual, said that law enforcement officials were investigating the wire fraud activities, and asked the individual to see what **NIX** wanted done with the files so that they would not fall into the hands of law enforcement officials.

6. Shortly thereafter, the individual mentioned in Overt Act 5 spoke with **NIX** and then complied with **NIX'S** instructions to dispose of the records.

7. On or about May 9, 1988, when served with a federal grand jury subpoena for **NIX'S** trust account records, **HALAT** falsely told Federal Bureau of Investigation agents that he did not know the source of funds that went into the trust account for the benefit of **NIX**.

8. In the late summer of 1989, after the federal investigation refocused on the Sherry murders, **COOK** had repairs done to the floor of his house to hide the bullet holes from where he had test fired the Sherry murder weapon.

9. About that same time, in October of 1989, two confederates of **NIX** removed bullets which had been test fired from the Sherry murder weapon into the floor of the house where **HOLCOMB** stayed prior to killing the Sherrys, and had the area

covered with a new carpet to hide it from investigators.

10. Sometime around the Spring of 1991, **HOLCOMB** visited a third person who was aware of **HOLCOMB'S** identity as the one who shot and killed the Sherrys, in Biloxi, Mississippi, and told the person it only took him (**HOLCOMB**) about three minutes to take care of his business. The third person took this statement as an implied threat to keep quiet about the Sherry murders and as soon as **HOLCOMB** left, the third person discussed the visit with another confederate of **NIX** and **HOLCOMB**.

11. On May 14, 1991, **HALAT** gave misleading information concerning the trust account and **NIX'S** relationship with **HALAT'S** law firm to a federal grand jury.

12. Sometime after the federal government resumed active involvement in the Sherry investigation, in early September 1989, and before he testified in the murder for hire/wire fraud trial against **NIX, SHARPE**, and others in the Fall of 1991, **HALAT** asked the individual mentioned in Overt Acts 1, 2, 5, and 6 if he was sure he had destroyed all of the scam records, and the individual assured **HALAT** that he had.

13. On October 24, 1991, during her testimony in the murder for hire/wire fraud trial, **SHARPE** committed perjury in an effort to cover up the murder for hire and wire fraud conspiracy.

14. On October 29, 1991, during his testimony in the murder for hire/wire fraud trial, **HALAT** committed perjury in an effort to cover up the murder for hire and wire fraud conspiracy.

15. On or about July 18, 1994, **COOK** sent a threatening

letter to an individual in order to obstruct justice by inducing the individual not to cooperate in the on-going federal investigation of the wire frauds and the murders of Judge Vincent Sherry and Margaret Sherry.

All in violation of Section 371, Title 18, United States Code.

### COUNT 51

Beginning at least as early as 1985, and continuing thereafter until the date of this Indictment, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, the defendants **KIRKSEY McCORD NIX, JR.,** and **PETER HALAT, JR.,** did knowingly and willfully conspire with each other and with persons known and unknown to the Grand Jury, to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same, to knowingly transmit and cause to be transmitted writings and sounds in interstate communication by means of wire, i.e., telephone and telegraph, in violation of Section 1343, Title 18, United States Code.

It was a part of the conspiracy that the defendant **NIX** devise a scheme whereby confederates both within and without the prison system solicit funds from victims with false and fictitious representations as described more particularly in paragraph 1 of Racketeering Act C in Count 1 of this Indictment, the allegations of which are incorporated herein.

It was further a part of the conspiracy that confederates of

defendant **NIX** not in prison receive moneys described in the preceding paragraph through Western Union money order transfers, and interbank wire transfers, both within and without the Southern District of Mississippi, and thereafter deliver the moneys received to defendant **HALAT** and others, for the use and benefit of defendant **NIX** and the enterprise.

It was further a part of the conspiracy that defendant **HALAT** and others keep, maintain and disburse the moneys described in the two preceding paragraphs in accord with the instructions of defendant **NIX**.

It was further a part of the conspiracy that defendant **NIX** instruct others to use the moneys described in the three preceding paragraphs for purposes directed by defendant **NIX**.

It was further a part of the conspiracy that defendant **NIX** intend that the purposes for use of the moneys would include procuring the release of defendant **NIX** and others from imprisonment and paying the expenses of his confederates engaged in carrying out his instructions.

In furtherance of the conspiracy, and to accomplish the objects thereof, the following overt acts, among others, were committed:

### OVERT ACTS

1. Each of the acts alleged in Racketeering Acts C through G of Count 1 of this Indictment which are incorporated herein.

2. Each of the acts and overt acts alleged in Counts 18 through 49 of this Indictment which are incorporated herein.

3. Between 1985 and 1988, associates assisted **NIX** in operating the scam by picking up and delivering scam money as directed by **NIX**, and by assisting in the preparation of letters mailed to scam victims.

4. Between approximately May and September of 1988, and again early in 1989, associates assisted **NIX** in obtaining two computer systems to be used in the scam from Gulf South Analytical Services in Biloxi, Mississippi.

All in violation of Section 371, Title 18, United States Code.

### COUNT 52

On or about July 18, 1994, in Harrison County in the Southern Division of the Southern District of Mississippi, and elsewhere, the defendant **GLENN JOSEPH COOK,** did knowingly use intimidation and threaten another person, and attempt to do so, with intent to cause that person to withhold testimony from an official proceeding.

All in violation of Section 1512(b)(2)(A) and Section 2, Title 18, United States Code.

### FORFEITURES

1. The allegations contained in Counts 1 and 2 of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 1963.

2. The defendants **KIRKSEY McCORD NIX, JR., GLENN JOSEPH**

**COOK**, and **PETER HALAT, JR.**:

a. have acquired and maintained interests in violation of Section 1962, Title 18, United States Code, which interests are subject to forfeiture to the United States pursuant to Section 1963(a)(1), Title 18, United States Code;

b. had interests in, securities of, claims against, and property and contractual rights which afforded a source of influence over, the enterprise named herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Section 1962, Title 18, United States Code, which interests are subject to forfeiture to the United States pursuant to Section 1963(a)(2), Title 18, United States Code;

c. had property contituting and derived from proceeds which the defendants obtained, directly and indirectly, from racketeering activity in violation of Section 1962, Title 18, United States Code, and which property is subject to forfeiture to the United States pursuant to Section 1963(a)(3), Title 18, United States Code.

3. The United States' intent to forfeit includes, but is not limited to, the defendants' interests in the following assets:

a. $1,000,000.00 and all interest and proceeds traceable thereto.

b. Bank account #13-15-409, styled "Kirksey M. Nix, Jr. or Child Lift Trust Account" at the State National Bank in

Eufaula, Oklahoma, in that such account is property which the defendants acquired and maintained in violation of Sections 1962 and 1963(a)(1), Title 18, United States Code, and constitutes property which afforded the defendants a source of influence over the racketeering enterprise in violation of Section 1962, Title 18, United States Code.

c. Bank account #55-21-600, styled "Kirksey M. Nix, Jr. or Meagan Nix" at the State National Bank in Eufaula, Oklahoma, in that such account is property which the defendants acquired and maintained in violation of Sections 1962 and 1963(a)(1), Title 18, United States Code, and consitutes property which afforded the defendants a source of influence over the racketeering enterprise in violation of Section 1962 and 1963(a)(2), Title 18, United States Code.

d. Bank account #55-21-358, styled "Kirksey M. Nix, Jr." at the State National Bank in Eufaula, Oklahoma, in that such account is property which the defendants acquired and maintained in violation of Sections 1962 and 1963(a)(1), Title 18, United States Code, and constitutes property which afforded the defendants a source of influence over the racketeering enterprise in violation of Section 1962 and 1963(a)(2), Title 18, United States Code.

4. If any of the above-described forfeitable property, as a result of any act or omission of the defendants --

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred to, sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Section 1963(m), Title 18, United States Code, to seek forfeiture of any other property of the defendants up to the value of the above-described forfeitable property.

The above named defendants and each of them are jointly and severally liable for the forfeiture obligations alleged herein.

All pursuant to Section 1963, Title 18, United States Code.

BRAD PIGOTT
United States Attorney


A TRUE BILL:

_____ s/ signature redacted
Foreperson of the Grand Jury

58

58