**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**KIRKSEY MCCORD NIX, JR.**                                   **DEFENDANT/PETITIONER**

**V.**                                             **CRIMINAL CAUSE NO. 2:96-CR-30-KS-MTP-1**

**UNITED STATES OF AMERICA**                                        **RESPONDENT**

**ORDER**

This cause comes before the Court on the Motion for Compassionate Release [909] filed by Petitioner Kirksey McCord Nix, Jr. The Government responded to the original motion. *See* [918]. Petitioner then sought leave to amend and supplement his original motion. *See* [919]. The Court granted the requested leave in a Text Only Order dated October 23, 2023 and allowed the Government time to file a response to any new arguments made, but it did not do so. On December 11, 2023, Petitioner sent a letter to the Court that was docketed. *See* [928].[1] The Court has reviewed all the filings and the underlying docket in this matter, as well as the applicable case law, and otherwise being duly advised in the premises, the Court finds that Petitioner's request for compassionate release will be denied for the reasons set forth below.

**I.    BACKGROUND**

In the instant case, following a jury trial in July 1997, Petitioner was found guilty and convicted on 32 counts of a federal indictment that included the following crimes:

> **Count 1**: Conspiracy to commit racketeering in violation of 18 U.S.C. § 1962(d) that addressed eleven specific acts of racketeering involving the Petitioner (Acts A-K). These acts included, but were not limited to, a conspiracy to murder Vincent and Margaret Sherry, as well as the actual murders, numerous acts of wire fraud, money laundering, and conspiracy with intent to distribute marijuana.[2]

---

[1] The same letter was filed on December 13, 2023 at Doc. No. [929] only in a different word font.
[2] "Racketeering Act A" involved the conspiracy to murder both Vincent and Margaret Sherry and the actual murder of Vincent Sherry. [895] at p. 9-12. "Racketeering Act B" involved the actual murder of Margaret Sherry. *Id.* at p. 13.

**Count 2**: Engaging in a racketeering enterprise in violation of 18 U.S.C. § 1962(c) that involved the same specific acts of racketeering listed in the conspiracy violation in Count I.

**Count 3**: Conspiracy to escape in violation of 18 U.S.C. § 371 that involved a plan to escape from the Harrison County jail.

**Counts 22-49**: Committing wire fraud in violation of 18 U.S.C. § 1343 that involved the transfer of money by wire as part of a lonely-hearts scam operation.

**Count 51**: Conspiracy to commit wire fraud in violation of 18 U.S.C. § 371.

This case, however, was not the Petitioner's first run-in with the law nor was it his first conviction for elaborate and violent crimes. In 1972, Petitioner was convicted for the murder of Frank Corso, a New Orleans grocery executive, and began serving a life sentence without parole in the Louisiana State Prison System at Angola State Penitentiary. *See generally*, *State v. Nix*, 327 So. 2d 301, 313 (La. 1975). In addition to his 1972 conviction, and prior to his conviction in this case, in 1992, Petitioner was convicted for conspiracy to violate the fraud-by-wire and murder-for-hire statutes, along with substantive wire fraud violations. *See* Case No. 1:91-cr-40 (S.D. Miss. 1991); *United States v. Sharpe*, 995 F.2d 49 (5th Cir. 1993).[3] It was while Petitioner was incarcerated at Angola that the underlying events giving rise to these federal convictions took place—all in an effort "to earn enough money to buy his way out of prison." *United States v. Nix*, No. 2:96-cr-30-KS-MTP, 2007 WL 737752, at *1 (S.D. Miss. Mar. 7, 2007).

As for Petitioner's sentences on these numerous convictions, in addition to the life sentence without parole for the Louisiana crime, Petitioner was further sentenced in 1992 to five

---

[3] The "sordid tale" of the underlying events has been set forth in prior opinions by the Fifth Circuit, one of which was cited by this Court and is hereby incorporated by reference. *See* 2007 WL 737752, at *1-2 (quoting *United States v. Sharpe*, 193 F.3d 852, 861 (5th Cir. 1999)). In the 1992 case, the court described Petitioner as having "masterminded" the underlying conspiracy. *See Sharpe*, 995 F.2d at 50.

years on each of the three counts that are to run consecutively for a total of 15 years, all of which were to run consecutively to the Louisiana sentence. (Pre-Sentence Investigation Report ¶ 98). Further still, for his conviction in this case on September 22, 1997, Petitioner was sentenced to concurrent life sentences on each of Counts 1 and 2, concurrent five-year sentences on each of Counts 18, 22-49 and 51, fined $500,000 and ordered to pay restitution of $232,767.11. *See* Final Judgment [626]. All sentences were ordered to be served consecutively to any undischarged sentences already imposed. *Id.* Needless to say, Petitioner is not forecast to be released from prison within his lifetime.

Petitioner has filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). When Petitioner filed his motion, he was incarcerated at BOP El Reno and requested that he not be transferred during the pendency of his request for a sentence modification absent a verifiable medical reason. *See* [911]. The Court denied that request. [914]. Since that time and apparently for medical reasons, Petitioner was transferred to the Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield"). *See* [920] (Gov't Certificate of Service); *see also* https://www.bop.gov/inmateloc/?os=vb.&ref=app (last accessed 2/3/25).

## II. DISCUSSION

Between his initial motion and his amended motion, Petitioner raises four bases in his request to have this Court to reduce his sentence to time served. The first three grounds are raised pursuant to the "extraordinary and compelling reasons" provision of Section 3582(c)(1)(A)(i) based on Petitioner's health issues and age, as well as an arguable change in the law. The third ground is based on Section 3582(c)(1)(A)(ii), addressing age and the duration of time spent in prison. The Government has responded that regardless of Petitioner's technical eligibility, the

Court should deny this motion because the Petitioner is a danger to the community and consideration of Section 3553(a)'s sentencing factors alone justify the denial of relief.

### A.     Exhaustion Requirement

Before a district court assesses the merits of a motion for compassionate release, a defendant must show that he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or that "30 days [have passed] from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Petitioner states in his motion and avers in a declaration dated July 25, 2023 that on May 5, 2023, he submitted to FCI Warden Goldey a petition for the BOP to request a sentence modification. [909] at Ex. A. Petitioner further avers, and the records show, that the Warden denied Petitioner's request on July 20, 2023 and notified Petitioner that he had 20 days to appeal the decision. The instant motion was filed on August 22, 2023. Therefore, the Court concludes that Petitioner has satisfied the administrative exhaustion requirement, and the Government does not argue to the contrary.

### B.     Merits of the claims

#### 1.     Extraordinary and Compelling Reasons

Under 18 U.S.C. § 3582(c), a district court may reduce the term of imprisonment if, after considering the applicable sentencing factors under 18 U.S.C. § 3553(a) to the extent they are applicable, it finds "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before granting a motion for reduction in sentence, a court must also conclude that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The analysis of extraordinary and compelling reasons is informed by the policy statement issued by the U.S. Sentencing Commission. *See* U.S.S.G. § 1B1.13 (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). Section 1B1.13 was recently amended with an effective date of November 1, 2023 and now contains a non-exclusive list of six extraordinary and compelling reasons within the policy text itself, offering greater clarity to courts. *See* U.S. Sent'g Guidelines Manual Supplement to App. C (U.S. Sent'g Comm'n 2023) at 200–210 (Am. 814).[4] Petitioner relies on the following three extraordinary and compelling reasons listed in the policy statement: (1) medical circumstances of the defendant; (2) age of the defendant; and (6) unusually long sentence. The Court will address each briefly in turn.

### a. Medical circumstances

Policy statement 1B1.13, as amended, sets forth certain medical circumstances that a defendant may be suffering from, as well as age itself, that could qualify as extraordinary and compelling reasons. The two medical circumstances cited by Petitioner are that the defendant is "suffering from a serious physical or medical condition" and "experiencing deteriorating physical or mental health because of the aging process"—either of which must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13(b)(1)(B)(i),(iii). Plaintiff also relies on the "age of the defendant" provision that provides:

> The defendant (A) is at least 65 years old; (B) is experiencing a serious
> deterioration in physical or mental health because of the aging process; and

---

[4] Amendment 814 revised Section § 1B1.13, which, among other things, now made clear that the policy statement applies to both defendant-filed and BOP-filed motions for sentence reductions.

(C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

*Id*. at § 1B1.13(b)(2).

Petitioner, at the time of this motion, was 80 years old. [909] at p. 7. He states that he is a Medical Care Level 3 inmate, who by definition has complex and chronic medical or mental health conditions and who requires frequent clinical contacts to maintain control or stability of their condition. Petitioner claims to have mobility issues and has moved around by wheelchair for the past few years. [909] at p. 4. He has been diagnosed with chronic ischemic heart disease and has a history of edema, exertional dyspnea, hypertension, hearty surgeries, and hyperlipidemia.[5] Petitioner cites to and relies on cases where similar ailments, age, and mobility issues have resulted in various courts' granting compassionate release. [909] at p. 6.[6]

Based on what Petitioner has presented in both his original motion and his amended motion, and without addressing each and every case that analyzes certain medical conditions, on its face, Petitioner's motion appears to have stated an extraordinary and compelling reason under the policy statement due to his multitude of medical conditions. The Court must note, however, that Petitioner is now in custody at the Medical Center for Federal Prisoners and is presumably receiving better care for all of his ailments.

### b. Unusually long sentence

Another basis for release argued by Petitioner in his amended motion is predicated on one of the newly promulgated extraordinary and compelling reasons listed in the Sentencing Guidelines policy statement: "unusually long sentence." [919] at p. 3 (citing U.S.S.G. §

---

[5] In his amended motion, Petitioner addresses, *inter alia*, his congestive heart failure, diabetes, sleep apnea, high cholesterol, long haul Covid, and cataracts. [919] at pp. 8-14.
[6] Petitioner cites to cases from the Middle District of Florida and the Southern District of Alabama. The Court finds that the cases indeed reflect the granting of motions for similar health conditions.

1B1.13(b)(6)). This provision provides specifically:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion was filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6)).

Petitioner argues that he has served well over 10 years of his sentence and contends that that a "change in the law" came over 20 years ago in *Apprendi v. New Jersey,* when the U.S. Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Petitioner contends that the sentencing factor that caused the judge in his case to sentence him to the statutory maximum of life on Counts 1 and 2 (for violations of 18 U.S.C. § 1962(c) and (d)) was based on the underlying racketeering activity of murder (Racketeering Acts A and B) but the jury never found specifically that Petitioner was guilty beyond a reasonable doubt of that particular underlying offense because he was charged jointly on numerous other racketeering activities. [919] at pp. 4-5.

While this is an interesting argument, it misapprehends the holding of *Apprendi* as applied to this case. Here, the penalty statute for racketeering states: "Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment) . . . ." 18 U.S.C. § 1963(a). Thus, the statutory maximum *could be* life. The underlying racketeering activity of murder was used to determine

the defendant's base offense level, which did not *increase* the defendant's statutory maximum—it only increased the *guideline* to life imprisonment.[7] As such, *Apprendi* does not apply. *See United States v. Doggett,* 230 F.3d 160, 166 (5th Cir. 2000) (explaining that the "decision in *Apprendi* was specifically limited to facts which increase the penalty beyond the statutory maximum and does not invalidate a court's factual finding for the purposes of determining the applicable Sentencing Guidelines."); *United States v. Elwood*, 2024 U.S. Dist. LEXIS 20265, at *12 (E.D. La. Feb. 6, 2024); *see also United States v. Hinojosa*, 749 F.3d 407, 412 (5th Cir. 2014) (explaining that fact finding on relevant conduct, to the extent it increases the discretionary sentencing range for a district judge under the sentencing guidelines, need not be made by a jury). Thus, *Apprendi* does not represent a change in the law that result in a gross sentencing disparity in Petitioner's case.[8]

### c.    3553(a) Sentencing Factors

Even if a court finds there are extraordinary and compelling reasons for a sentence reduction, Section 3582(c)(1)(A) mandates that the Court may reduce the term of imprisonment only after considering the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable" and determine whether they counsel for or against release. *See United States v. Shkambi,* 993 F.3d 388, 393 (5th Cir. 2021). The following are some of the applicable factors a

---

[7] As the Government points out and this Court has verified, according to the Presentence Investigation Report ("PSR") for the Petitioner, at the time of sentencing, Petitioner had a total offense level of 43 and a criminal history category of III, resulting in a guideline range for imprisonment of "life."   [918] at p. 1 (citing PSR at ¶ 131). The Court's pronouncement at sentencing makes clear how the *guidelines* were adjusted, not the statutory minimum. *See* Tr. of hearing [642] at pp. 77-80.

[8] The Court notes that Petitioner made this very argument on direct appeal, and the Fifth Circuit found that the district court properly sentenced Petitioner. *See United States v. Sharpe*, 193 F.3d 852, 873 (5th Cir. 1999). As the court explained, "The applicable sentencing guideline, U.S.S.G. 2D1.1 [sic] provides that the base level is the greater of 19 or the 'offense level applicable to the underlying racketeering activity.' Here, the underlying activity involved violations of Mississippi murder statutes, and the district court properly analogized this offense to the federal first-degree murder offense during sentencing." *Id*. This Court notes that the Fifth Circuit may have mistakenly referred to the wrong sentencing guideline because it is not U.S.S.G. 2D1.1., but *2E1.1*, that deals with "Unlawful Conduct Relating to Racketeer Influenced and Corrupt Organizations."

court may consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed . . . medical care.

18 U.S.C. § 3553(a)(1),(2).

It is important to note that a court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances. *See United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022) (explaining that a "district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction."). Here, even assuming Petitioner's age and medical conditions meet the definition of an extraordinary and compelling reason under the policy statement, the Section 3553(a) factors strongly counsel against Petitioner's early release.

First, as to the nature and circumstances of the singular "offense," it must be said that there are *many* offenses for which Petitioner has been convicted—undoubtedly, the most egregious of which was his involvement in not one, but three murders—the ultimate offense against humanity. As for the history and characteristics of the defendant, one need not look any further than Judge Pickering's findings during Petitioner's sentencing, some of which are as follows:

"Mr. Nix, even in his teen years, was brash, abrasive and coolly calculating."

9

"[I]n his twenties, Mr. Nix made a living by gambling and cheating at cards and apparently by burglary as well. At age 25, Mr. Nix served his first term in the penitentiary for attempting to bribe a police officer . . . . When Mr. Nix was 27, he committed a brutal murder in the course of a brazen burglary in New Orleans."

"The evidence clearly establishes that Mr. Nix is deceitful, treacherous, merciless and that he has a heart of concrete."

"I do not know of anyone that I've come across since I've been on the bench who has inflicted more heartache and misery or cost to society than Mr. Nix."

"No [] individual[] that this Court has ever come across come[s] closer to epitomizing the work of the devil than Kirksey Nix."

[642] at pp. 73-76.

There is indeed a need for the life sentence that was imposed. It is needed in this case to reflect the seriousness of his offenses. In addition to the murders, Petitioner was the mastermind of a years-long scam against lonely individuals willing to send money unsuspectingly. Having led a life of crime for so many years, even his 1992 conviction could not stop Petitioner's thirst for crime because Petitioner "continued his schemes from jail after the 1991 trial." *United States v. Sharpe*, 193 F.3d 852, 860 (5th Cir. 1999). Such a pattern of conduct and the types of offenses establishes that the sentence imposed is needed to promote respect for the law, provide just punishment, and deter criminal conduct. And most importantly, due to the breadth and reach of these crimes, the sentence is needed to protect the public from further crimes of the defendant.[9]

Based on the foregoing, the Court finds conclusively that the sentencing factors strongly militate against a reduction in sentence, let alone early release. *See United States v. Levin*, 2020 WL 253778 at *3 (N.D. Ind. May 19, 2020) (noting "society would benefit from defendant continuing to serve his life sentence, as defendant will not be able to engage in further horrific

---

[9] In exercising its discretion, the Court has also considered the submission of Lynne Sherry Sposito (on behalf of the Sherry family) pursuant to the Crimes Victims' Rights Act, 18 U.S.C. § 3771(a)(2), (4). [930-1].

acts or otherwise cause additional torment to [survivors of murder victims]"). On this basis, the motion will be denied, but in the interest of thoroughness, the Court will address Petitioner's final argument.

### 2. Age and duration in prison

In addition to his "extraordinary and compelling reasons" argument, Petitioner also relies on the second provision of Section 3582(c)(1)(A), which states that a defendant must be at least 70 years of age and must have served "at least 30 years in prison pursuant to a sentence imposed under Section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and that the defendant is not a danger to the safety to any other person or the community." 18 U.S.C. § 3582(c)(1)(A)(ii). Petitioner argues that he was 80 years old at the time of filing and that his convictions in 1991 and his current prison term arose from the "same course of conduct," resulting in his present incarceration of over 31 years, thereby qualifying him under the statute.

The policy statement indicates that if a plaintiff qualifies, the court still must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2).[10] Petitioner urges that he is no longer a danger to society because the acts that resulted in his conviction occurred more than 36 years ago. [909] at p. 7.  While acknowledging that he was incarcerated at Angola at the time of his federal offenses, Petitioner claims that the "lax conditions and easy corruptability [sic] of prison administration and staff fostered and nurtured an environment for Defendant to engage in

---

[10] Section 3142 addresses the release or detention of a defendant pending trial. Among the factors to be considered are: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence [] ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including—the person's character . . . criminal history, and whether, at the time of the current offense, the person was on probation, on parole, or on other release; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

criminal activity while he was imprisoned there." *Id.*   He claims to accept full responsibility for his actions, though, and urges the Court to acknowledge his rehabilitation and take note that his last disciplinary infraction was over 14 years ago at the time of filing the motion. *Id.* at p. 8. Petitioner claims that he does not pose a risk to others or the community due to his age and his laundry list of health issues. *See id.*; *see also* [919] at p. 22 (arguing that he does not pose any type of danger whatsoever, "as he knows the consequences of any type of misbehavior"). The Court disagrees.

While the Court recognizes the age of the Petitioner and notes his numerous health issues, the Court is not convinced that he is not a danger to the safety of any other person or the community. As the Government points out, the safety of the community has been found to refer "not only to the mere danger of physical violence but also to the danger that the defendant might engage in [any] criminal activity to the community's detriment." *United States v. Mackie*, 876 F. Supp. 148, 149 (E.D. La. 1994). Petitioner's criminal history alone shows that he is a danger to the community. *Cf. United States v. Gonzales*, No. 2:08-318-12, 2018 WL 9372475, at *1 (S.D. Tex. Sept. 17, 2018) (denying a motion for a sentence reduction on the basis that the defendant's aggravating role in a large-scale conspiracy and history of trafficking narcotics poses a danger to the community).

As plainly admitted by Petitioner, almost his entire life has been one of crime. In his letter to the Court, Petitioner describes how his early cons and scams began when he was just 21 years old in 1964. *See* [928] at p. 2 (admitting that he "went through life gambling, cheating, stealing and conning and harming too many victims to count").[11] Given the convictions for his most recent crimes, Petitioner may well be one of the most notorious criminals in Mississippi's

---

[11] Judge Pickering also recounted Petitioner's life of crime during the sentencing hearing. [642] at pp. 81-82.

modern history. In assessing his criminal history, the Court is mindful of the boldness, the nature, and the goal of many of Petitioner's past crimes.

In this case alone, not only the lonely-hearts scam that conned numerous individuals out of hundreds of thousands of dollars but also, and egregiously worse, racketeering crimes involving the conspiracy and murders of prominent individuals were crimes Petitioner was able to commit while incarcerated at a state penitentiary. These were not crimes that required physical strength, such that an 80-year-old man in failing physical health would not be able to commit in the future. They simply required a cunning, criminal mind and a telephone.[12] Having led a life of crime for so many years, even his 1992 conviction could not stop Petitioner's thirst for crime. Petitioner "continued his schemes from jail after the 1991 trial." *United States v. Sharpe*, 193 F.3d 852, 860 (5th Cir. 1999). His wire fraud conspiracy continued into 1996 when he was indicted and convicted again under the RICO statute. *See id.* at 866 (5th Cir. 1999).

And lest we forget, Petitioner's overarching purpose of his many racketeering offenses was "to earn enough money to buy his way out of prison." *Id.* at 860. His crimes did not stop until he went into federal custody under the sentence imposed by this Court, and it will not be this Court who gives him a "get-out-of-jail-free card" no matter how "rehabilitated" Petitioner claims to be. He has been, and the Court finds that he continues to be a danger to the safety of others and the community.

## III.    CONCLUSION

For the reasons stated herein, the Court finds that both the Section 3553(a) sentencing factors and the Petitioner's continuing to be a danger to the safety of others and the community

---

[12] The Final Judgment recommends to the Bureau of Prisons: "That the defendant not have access to a telephone, unless it is an emergency situation, and only then under close supervision." [626] at p. 2. As Judge Pickering noted, "Mr. Nix has demonstrated too many times what he can do with a telephone." [642] at p. 81.

militate against allowing Petitioner's early release from prison.

THEREFORE, it is hereby ORDERED that Defendant's Motion for Compassionate Release [909], both as originally filed and as amended [919], is DENIED.

SO ORDERED AND ADJUDGED this 3rd day of February 2025.


/s/ Keith Starrett
KEITH STARRETT
SENIOR UNITED STATES DISTRICT JUDGE